THE STATE v. RAY DECKER, Appellant.—33 S. W. (2d) 958.

Division Two, December 20, 1930.

*Frederick F. Wesner* and *E. W. Jones* for appellant.

950

*Stratton Shartel,* Attorney-General, and *Henry Depping,* Assistant Attorney-General, for respondent.

DAVIS, C.—In an information filed in the Circuit Court of Pettis County by the prosecuting attorney, it was charged that defendant, on July 30, 1929, subsequent to judgments and sentences for grand larceny and robbery in the first degree in 1920 and 1921, respectively, and imprisonments in the penitentiary and due discharges therefrom, robbed the Community Bank of Smithton of $255. Tried to a jury, its verdict was guilty and the punishment assessed at fifteen years in the penitentiary. Defendant appealed from the judgment entered on the verdict.

The evidence for the State tends to show substantively the participation of defendant in the robbery of said Community Bank, but, as defendant relies upon entrapment to absolve him, we summarize the evidence more especially to that end.

The evidence for the State warrants the finding that defendant, in the Circuit Court of Pettis County, on January 9, 1920, pleaded guilty to grand larceny and was sentenced to the penitentiary for two years, and that he was taken to the penitentiary and was later discharged under parole by the Governor. Also that, on April 16, 1921, in the Circuit Court of Cole County, defendant pleaded guilty to the charge of first degree robbery, and received a sentence of ten years in the penitentiary; that he was received in the penitentiary on April 16, 1921, and discharged under merit time on February 15, 1927.

The State's evidence develops that the Community Bank was located at Smithton, Pettis County. F. C. Page was its cashier, and Miss Gladys Klein its bookkeeper. On July 30, 1929, around eleven o'clock A. M., defendant and one Jack Long, *alias* Fred Johnson, drove to the bank in Long's Chevrolet roadster, with Long at the wheel. Certain Pettis County officers, advised of the contemplated robbery of the bank, were stationed at various places thereabout. Long alighted from the car and proceeded into the bank with a revolver in his hand. In the meantime defendant remained in the car, adjusting his cap and placing rubber finger tips or gloves on his hands. Following Long into the bank, he saw Page and Miss Klein with their hands raised and covered by Long's revolver. They were ordered to face the wall and to lie face down upon the floor. Defendant, who also brandished a revolver, at the order of Long, proceeded behind the cage and to the money drawer of the bank, taking from it $255 in money. Defendant and Long, at the point of their revolvers, then ordered Page and Miss Klein into the vault and closed the door. Long backed out of the bank into the street and was taken in custody by Officer Tindle. A search was made for defendant, and he was discovered in the basement of the bank. On his apprehension, he was returned to the banking room and searched, and there was found hidden in his sock the sum of $103. Additional money was found in the basement about the furnace pipes. They also took some finger tips from defendant. Miss Klein testified that five or ten minutes before the robbery occurred, Long came into the bank and walked over to Page, but she did not hear him say a word. Page said that, about fifteen minutes prior to the robbery, Long twice came into the bank, saying nothing the first time, but, on being asked by Page on the second visit what, if anything, he could do for him, said, "If you are held up and offer any resistance, we shall shoot hell out of you." The sheriff testified that he first saw Long in the office of the Chief of Police of Sedalia a few days before the robbery and that he, the chief of police and the prosecuting attorney were present. Long drove the Chevrolet car to Smithton on the morning of the robbery. The evidence shows that all the officers were present at Smithton in anticipation of a robbery. Page said that he was in Sedalia on July 25th or 26th, and talked to the chief of police, but he was not informed that his bank was to be

robbed. The sheriff testified that Long was a silent participant in the bank robbery, that the plan was to catch defendant, and Long was to cooperate with the officers. He told Page that Long was cooperating with them and that he did not intend to rob the bank. The evidence shows, we think, that Long was not to be prosecuted. Both before and after the robbery, Long was given money by the chief of police and the sheriff. The pistol used by defendant was made to explode rim-fire cartridges, but center-fire cartridges were found in it by the officers immediately subsequent to the robbery. Long was released by the authorities the night of the robbery.

**Defendant's evidence.** Defendant testified that Long approached him on July 13th, asking if he was not Ray Decker. On admitting it, after a common-place conversation, defendant boarded Long's car and they went to a carnival in the suburbs of Sedalia. Long advised defendant that he was a bank robber, and inquired regarding a convenient bank to rob. He left Long that night around ten-thirty. On July 24th, as defendant was passing the jail, Long holloed to him from the jail and informed him that he had been picked up for investigation. Long again approached defendant on July 26th, and advised him that the Community Bank at Smithton was short in its accounts, but covered by insurance, and that the chief of police had sent him to talk to appellant, as an arrangement had been made with Page, who would arrange the bank books, to hold up the bank. Defendant informed Long that he did not desire further trouble, and refused to go. Long importuned defendant to participate in the bank robbery, advising him that the chief of police was the law and that he would get them out of trouble. Finally on July 29th, Long said everything was fixed, and, after furnishing defendant a gun and importuning him, defendant boarded Long's car and drove with him to Smithton. Suffice it to say that defendant refused to carry out the robbery, and they returned to Sedalia, Long calling defendant "yellow," because of the refusal. Defendant then informed Long that he would not go back the next day and that he would not go back at all.

However, on the next morning, defendant said he saw the chief of police on a certain corner, and he accosted defendant, saying that he, with men in two machines observable, was going to raid some bootleggers, and that he advised defendant to go ahead, that the bank was fixed. On going toward town, defendant met Long. Long holloed to him and asked him if he was going, and, on refusing to go, Long told him that he had seen the chief and that if he did not go, he would be turned over to the prosecuting attorney. Defendant then boarded the car with Long, who drove him to Smithton. On defendant again refusing to have anything to do with a robbery, Long alighted and entered the bank, and, on returning, advised him that the banker said everything was fixed. Long again entered the bank, and defendant in a few minutes followed, after adjusting his cap and putting on

finger tips. On an order from Long, defendant, with a gun in his hand, searched the till drawers for money, and, upon finding some, he appropriated it. Long, after ordering Page and Miss Klein into the vault, backed out the door into the arms of officers. Defendant observed that, and proceeded to the basement, putting some of the money in his sock and throwing the rest with his cap into the furnace.

After his release, Long was picked up by the Sheriff of Morgan County, and defendant there subpoenaed him to appear for his deposition. After notifying Pettis County authorities, the Sheriff of Morgan County released him, and Long disappeared.

Defendant offered the deposition of the chief of police, who was ill. The chief testified that, prior to the robbery of the Smithton bank, he picked up Long for investigation. Long operated a green Chevrolet roadster, the car used in the robbery of the Smithton bank. In the presence of the sheriff and prosecuting attorney, Long advised them of a contemplated bank robbery on a certain date and the participants, but it was uncertain whether it was a bank at Pleasant Green, Smithton or Otterville. Defendant wanted Long to participate therein. Long detailed the story of the proposed robbery. Long visited the witness twice thereafter, and advised on the last visit that a bank at Smithton was to be robbed on a certain day. Due to cold feet, as Long put it, the bank was not robbed on that day. Long advised that the robbery was to take place the next day, when he returned to the lumber yard, where the officers were concealed, to advise them that defendant said that too many people were on the streets to go through with the robbery. After the robbery, the chief gave to Long's wife some money to purchase a ticket to go to Oklahoma. The chief also gave Long twenty-five dollars, upon his release the night of the robbery, in the presence of the sheriff and prosecuting attorney.

Keyser testified, by deposition, that he was secretary of the Missouri Bankers' Association, and that he talked to the officers prior to the robbery of the Smithton bank. They said that Long had informed them that defendant had approached him relative to the robbing of a bank and Smithton was mentioned. He advised the officers to confer with the banker at Smithton, and to prepare to catch the robbers robbing the bank. He advised that, as Long gave information to the officers relative to the contemplated robbery, it was fair to release Long, if he was apprehended. He understood that defendant was the only one participating with any intention of committing a crime.

Jackson testified that he resided in Smithton, and that, on the day and prior to the robbery, he observed Long at the lumber yard in conversation with the officers.

Other facts, if any, will be adverted to in the opinion.

I. On the ground that he was entrapped and consequently not guilty of robbery, defendant offered, both at the close of the State's case and at the close of all the evidence, an instruction directing the jury to find him not guilty. Having offered evidence in his behalf, defendant waived the right to predicate error on the instruction offered at the close of the State's case. However, in renewing the instruction at the close of all the evidence, he does not lose in effect any of his rights, except that the so-called demurrer to the evidence searched all the evidence to determine whether the State made a submissible case. Therefore, if there is substantial proof in any of the evidence tending to establish defendant's guilt, a question of fact was raised for the determination of the jury, and we are bound by their verdict. [State v. Catron, 317 Mo. 894, 296 S. W. 141.]

Defendant takes the position that upon the evidence he should have been acquitted, because he was entrapped. He asserts that the evidence establishes, as a matter of law, first, that the criminal intent originated in the mind of the entrappers, and that he was lured into the commission of the offense charged, in order to prosecute him therefor (State v. Decker, 14 S. W. (2d) 617); second, that the robbery was with the consent and not against the will of the Community Bank of Smithton and its officers and agents (State v. Perrin, 316 Mo. 585, 292 S. W. 54).

We discover nothing in the State's evidence that conclusively shows that the criminal intent originated in the mind of Long or the State or city officers. It is true that the evidence shows that Long cooperated with defendant in the perpetration of the robbery and pretended to aid and abet him, but these facts do not establish that the criminal design originated in the mind of Long. Where the criminal intent or design originates in the mind of the accused and the offense is completed, the fact that an opportunity is furnished, or that the accused is aided in the commission of the crime in order to secure evidence necessary to prosecute him therefor constitutes no defense. (18 A. L. R. 146.) The jury were authorized to infer from the facts that the criminal design originated with defendant, and the facts otherwise show that defendant performed every necessary deed to establish the complete offense of robbery. Moreover, the deposition of the chief of police, introduced in evidence by defendant, tends to show that the criminal design originated with defendant, for the witness testified that Long advised him that a bank robbery was to be pulled off on a certain date, and that defendant wanted him to get in it.

We observe nothing in the evidence for the State that tends to show that Page or the Community Bank or the officers consented to the robbery or the taking of the bank's money. It may be that Page was warned that an attempt might be made to rob the bank, although he testified to the contrary, and that, just prior to the robbery, Long

said, "If you are held up and offer any resistance, we shall shoot hell out of you," but this does not establish that Page or the bank consented to the robbery or the appropriation of the money. The evidence goes no further than showing that he was merely passive, neglecting to take steps to protect the property of the bank, but that is not the equivalent of consent. Analogous facts are fully discussed in the case of State v. West, 157 Mo. 309, 57 S. W. 1071, and the reasoning applies to the facts herein. [18 A. L. R. 189.] The State made a submissible case, and the issue of entrapment was for the jury, concerning which the court fully instructed them. The instructions requesting a directed verdict of not guilty were properly overruled.

II. (a) On the ground that the records were the best evidence, defendant asserts error in permitting State's witness Bolton to testify that, following his conviction for grand larceny in Pettis County in ▮▮▮▮▮▮▮. 1920, he took defendant to Jefferson City and delivered him to the penitentiary. In connection with the plea of guilty to grand larceny, the judgment and sentence, and the penitentiary records showing his discharge by parole, the evidence objected to was admissible as the best evidence to identify defendant as the identical person. [State v. Dalton, 23 S. W. (2d) 1, l. c. 6.]

(b) State's witnesses, Eicholz and Bolte, were permitted to testify, in substance, that, in the presence of defendant and upon the search of him, they did not see the money taken from defendant, but that ▮▮▮▮▮▮ they looked over and saw a roll of money handed out and someone say, "Here is the other money." It is unnecessary to say more than that, if this was error, it was not prejudicial, for defendant on taking the stand admitted that some of the bank's money appropriated by him was placed in his sock and the remainder was thrown by him in or to the rear of the furnace.

(c) The court excluded evidence offered by defendant tending to show that, about two days subsequent to the robbery of the Community Bank, Long told two persons that "the law at Sedalia wanted him ▮▮▮▮▮▮ to get them boys to rob the bank at Smithton and they would give him $50 and turn him loose." As this conversation occurred subsequent to the robbery, it was no part of the res gestae. It was hearsay evidence and consequently inadmissible. [State v. Buckley, 298 S. W. 777, l. c. 780.]

III. The court deleted the last portion of defendant's Instruction 5 offered, and complaint is made thereto. The deleted portion was

to the effect that the former convictions of defendant were not to be considered by the jury as any evidence of his guilt as to the robbery, but, in the event he was found guilty of robbery, such convictions were to be considered only as bearing on the question of the amount of the punishment. The court gave other instructions, which fully protected defendant as to the aforesaid subject, resulting that no error obtained.

IV. Defendant offered instructions X and Y, which the court refused. They were predicated on the entrapment of defendant. The instructions were improper, because they contained no requirement of a finding by the jury that the criminal intent to rob the bank did not originate with defendant. Moreover, the court gave instructions at the instance of defendant, which fully covered the issue of entrapment, and also fully protected the rights of defendant.

V. The defendant offered and the court gave at the instance of defendant Instruction 6. Defendant asserts that the instruction was given on the court's own motion, and charges that error obtained in giving it. The record before us shows that defendant prayed the court to give this instruction, and it is marked "given." We are bound by the record as we find it to be. Inasmuch as it was given at the instance and upon the request of defendant, he may not now complain of it.

VI. Instruction D is asserted erroneous. It informs the jury that where the criminal intent to commit a crime originates in the mind of the defendant on trial and the offense is accomplished, it constitutes no defense that an opportunity is furnished or that an officer aided the accused in the commission of the crime in order to obtain evidence upon which to prosecute him. It then informs the jury that if they find from the evidence that the criminal intent, if any, to rob the bank originated in the mind of defendant, and the robbery was accomplished, it is no defense to said robbery that an opportunity was furnished or that an officer aided.

(a) Defendant asserts that the instruction did not properly declare the law of the case, but in that we think he is mistaken. It follows precedents. [State v. Murphy, 6 S. W. (2d) 877; 18 A. L. R. 146 et seq.]

(b) It is said to be misleading and in direct conflict with instructions numbered 6 and 7. It is certainly not misleading, for it correctly declares the law. Neither is it in conflict with said instructions,

for they, in substance, direct the jury to acquit him if they find that the criminal intent to rob the bank did not originate with defendant.

(c). It is also said that it assumed controverted facts, but it is evident that it did not assume any fact.

(d) The objection that it is an abstract proposition of law is presented. While the forepart of the instruction, taken alone, does abstractly state the law, yet taken as a whole, it informs the jury that, if the intent originated in the mind of defendant, the acts of the officers and Long were no defense. [State v. Williams, 309 Mo. 155, 274 S. W. 427; State v. Nasello, 30 S. W. (2d) 132.]

VII. Instruction E is criticised on the grounds that it does not properly declare the law or properly instruct the jury; that it is presumptive in nature; and that it is misleading. The instruction informs the jury that they may find the defendant guilty of robbery in the first degree with a dangerous and deadly weapon, without a prior conviction, or they may find him guilty of robbery in the first degree with a prior conviction, or they may acquit him altogether, according as they may find the facts to be from the evidence. Viewing the instruction from any angle that we may, we are unable to perceive that it is subject to the objections urged.

VIII. Defendant contends that the court erred in giving Instruction F to the jury. It may be called the principal instruction. Epitomized, it requires the jury to find beyond a reasonable doubt that defendant, with force and arms feloniously, etc., did rob and steal lawful United States money from the Community Bank. In view of the admissions in the testimony of defendant that he participated in the transaction, the objections, that the instruction does not properly declare the law; that it is a comment on the evidence; that it assumes controverted facts and issues; that it raises false issues; and that it is misleading, become of no importance. The two objections to be considered are (a) that it improperly refers to the information; and (b) that it ignores the defense of entrapment.

(a) The instruction, after requiring the finding of the necessary facts, concludes: "You will find the defendant, Ray Decker, guilty as charged in the information; and unless you so find you will acquit the defendant." This is the sole mention of the information in the instruction. The charge in the information was the robbery of the bank with a dangerous and deadly weapon. The reference to the information did not confuse or mislead the jury. No error in that regard obtained. [State v. Nasello, 30 S. W. (2d) 132, l. c. 138.]

(b) It is true that the instruction ignored the defense of entrapment. However, in other instructions the court directed an acquittal if the defense of entrapment was sustained in the minds of the jury by the evidence. This cured the defect otherwise obtaining. In State v. Glass, 318 Mo. 611, 300 S. W. 691, 1. c. 694, the court say: ''The rule in civil cases ought to apply: That an instruction covering the whole case, and authorizing a verdict without reference to a defense which there is evidence to support, is error, but it is cured, if another instruction be given embodying that defense.'' [State v. Nasello, 30 S. W. (2d) 132, 138.]

IX. Instruction G is denounced. This instruction was predicated on defendant's former conviction for crime and directed the jury, if they found that he was formerly convicted, sentenced and discharged from the penitentiary, to assess his punishment by confinement in the penitentiary for and during his natural life. The same objections are made to this instruction as were made to Instruction F, resulting that our rulings are the same. However, as the jury by their verdict did not find defendant guilty of the former convictions, it is evident that the jury were not influenced by the instruction, and that the complaint is untenable.

X. The final complaint is that the verdict was against the weight of the evidence and the result of passion and prejudice on the part of the jury. The setting aside of verdicts and judgments as against the weight of the evidence is the function of the trial court, and appellate courts do not generally, if ever, reverse judgments on that ground. [State v. Hedges, 295 S. W. 575.] We see nothing of passion and prejudice on the part of the jury. On the other hand, we observe some leniency on their part towards defendant, for the proof tended strongly to show the defendant's former convictions of felonies, thus authorizing the jury to assess his punishment at imprisonment in the penitentiary for life, which they refused to do. The cause was fairly tried. The judgment is affirmed. *Cooley, C.,* concurs.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.