**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Ronald DAVIS, Defendant–Appellant.**

**Nos. 41300, 41379.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 22, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Jan. 13, 1981.

438

James F. Booth, Clayton, for defendant–appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Michael A. Scearce, Asst. Attys. Gen., Jefferson City, George A. Peach, Cir. Atty., St. Louis, for plaintiff–respondent.

WEIER, Judge.

From a conviction of manslaughter and sentence of ten years imprisonment, the defendant Ronald Davis has appealed asserting error in the conduct of his trial. We affirm.

The facts favorable to the verdict establish that on the night of March 14, 1978, defendant Davis, Michael Lomax and at least one unidentified man entered the apartment of Henry Williams where Williams resided with Cheryl Henderson. Williams answered the door to the apartment and Henderson remained in the bedroom. Upon hearing a discussion about money, followed by a scuffling sound, Henderson turned on the bedroom light and stood in the doorway to the living room in order to investigate the circumstances of the noise.

There she saw defendant holding a gun to the head of Williams who had been forced to lie on the floor where he was being kicked and stomped by the intruders. After a fruitless attempt to obtain money from the bedroom, Lomax returned to the living room where Williams was held captive. According to her account, Henderson standing in the doorway saw Williams reach into his pocket and tell his assailants that this was all the money he had. Davis took the money and without saying anything to him fired a shot. The victim called Henderson's name and made a move as if to get up off the floor. She closed the bedroom door and heard what appeared to her to be about four shots. She then heard the victim's assailants run out of the apartment.

Later she identified Davis in a line–up as being the one she saw shoot Williams. The man she identified as being Michael Lomax also had a gun in his hand when he came in the bedroom searching for money. It looked like an automatic. Twenty–five caliber bullets which the ballistics expert testified came from an automatic pistol were taken from the body of the victim along with thirty–eight caliber bullets which were the type fired from a revolver. Neither weapon was recovered.

The first contention of error involves the admission of a certain record of the St. Louis Medium Security Institution. The record admitted was page fifty–one of a volume used at the institution to keep a record of visitors to persons held in custody. The top of this page contained the date of March 22, 1978, eight days after the killing of Williams and contained four columns. The first column was entitled, "Resident's Name"; the second column, "Your Name"; the third column, "Relationship"; and the fourth column, "Your Address." Among the entries was one in which the resident's name was given as Ronald Davis followed by the visitor's name Michael Lomax identified in the third column as friend and in the fourth column as residing at 5565 Brookside. At the time of trial the record was introduced by the State after identification by an employee of the Medium Security Institution who brought the record to the court. She testified that the book produced was a visitors' book where visitors who came in had to write their names, the resident's name, their relationship and their address. An employee of the institution sat where the visitors came in and the book was signed by every person that calls to visit an inmate there. No attempt was made to identify the handwriting other than that the entry was made by the person who visited the inmate. An objection was made that there was no evidence of who it was that made this entry in the book and there was therefore insufficient foundation.

Michael Lomax was present at the time of the killing of Henry Williams according to the testimony of Cheryl Henderson. She positively identified defendant Ronald Davis, and also connected Lomax with the incidents that occurred that night as related in the first part of this opinion. It was disclosed upon examination of witness Henderson that she was unable to identify Lomax at a line–up several weeks after the shooting but then after viewing several photographs including those of Lomax, she was able to positively identify him. It was apparently the purpose of the admission of the visitors' record at the Medium Security Institution to bolster her identification of Lomax, who was not a defendant in this case, to show that Lomax was acquainted with Davis and visited him after he was placed in detention. This arose after an attack upon the credibility of witness Henderson as to her identity of Lomax and the record was introduced to meet that challenge, in that it indicated defendant and Lomax at least knew each other.

The records of the St. Louis Medium Security Institution were offered under the authority of The Uniform Business Records As Evidence Law, §§ 490.660–490.690, RSMo 1978. The purpose of these statutes was to broaden the scope of admissibility of records made in the regular course of business as an exception to the hearsay rule. *State v. Taylor*, 486 S.W.2d 239, 242[1] (Mo. 1972). Under the act, when questioned, the trial court should determine whether the

sources of information, method and time of preparation are such as to justify its admission. This provision in the law vests in the trial court a considerable discretion in passing upon the admissibility of the record. *Thomas v. Fred Weber Contractor, Inc.*, 498 S.W.2d 811, 813[1] (Mo.App.1973).

The record here challenged is somewhat similar to that involved in the case of *Jackson v. State*, 476 S.W.2d 598 (Mo.1972). There a "board book" kept by the sheriff was introduced into evidence to prove that some of the witnesses who testified concerning conditions in the jail at the time the petitioner was held there and who complained about the poor conditions were not even inmates at the time. The court held that the board book in which the names of prisoners at the jail, the dates of admission and discharge, and the disposition of their cases was admissible under the business records exception to the hearsay rule. It is true that the sheriff or some personnel in the sheriff's office made the entries in the board book in contrast to the entries being made by the visitors in the book at the St. Louis Medium Security Institution. On the other hand, the entries at the St. Louis Institution were entered in a book under the supervision of that institution's personnel. Aside from the mechanical method of making an entry, the entries would be similar in factual content and source of information. As the trial judge stated in overruling the objection with regard to failure to lay a foundation, the reliability of the information so given would go to the matter of credibility rather than the method of keeping the record. If a clerk who kept the book interrogated the visitor as to who he was visiting, the purpose of the visit and his name and address, and thereupon entered the same in the record without further verification, it would give no more validity to the record than was established here.

Very similar facts to the case at bar are found in *People v. Remiro*, 89 Cal.App.3d 809, 153 Cal.Rptr. 89 (1979). There the witness identified "sign–in" sheets of a gun club. Appearing on identical days were the names of defendants and other conspirators. The witness who was president of the club was not present when the sheets were signed. The court held that presence of the witness at the time of entry went only to the weight and not admissibility. The records tended to show association of the persons whose names appeared therein.

Similar logged–in entries that were made by a guard at a private construction site indicating the presence of a defendant at that site at a particular date and time were held to be properly admitted in two federal cases. *Keeble v. United States*, 347 F.2d 951 (8th Cir. 1965), *cert. denied*, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 350 (1965); and *Wilson v. United States*, 352 F.2d 889 (8th Cir. 1965), *cert. denied*, 383 U.S. 944, 86 S.Ct. 1199, 16 L.Ed.2d 207 (1966).

■ Here there was sufficient information given to the court with regard to the method and time of making the entries and the source of information to establish that the record was admissible under The Uniform Business Records As Evidence Law, *supra*. *See also State v. Jones*, 518 S.W.2d 322, 324[1, 2] (Mo.App.1975).

■ We next consider a challenge to jury instruction number 10, a modified form of MAI–CR 3.52 which reads as follows:

"If you find and believe from the evidence that on some former occasion a witness made a statement inconsistent with his testimony in this case, you may consider such evidence for the purpose of deciding the believability of the witness and the weight to be given to his testimony. However, in deciding the guilt or innocence of the defendant, any prior statement of the witness, *other than the defendant*, must not be considered by you as evidence of the matters contained in the statement except as to those matters admitted by the witness to be true during his testimony in the case."

Defendant complains of the instruction because of the addition of the phrase "other than the defendant" italicized above.

Defendant states that because of the inclusion of this phrase, it placed undue and unnecessary stress upon the inconsistent

prior statements of the defendant and directed the jury to treat his statements made prior to trial differently from the statements of other witnesses. Rule 20.02 (now Rule 28.02), subsection (c) provides that wherever there is a MAI–CR instruction applicable under the law to the facts, this instruction must be given "to the exclusion of any other on the same subject." Under subsection (e) of that rule, the failure to give an instruction in violation of the rule constitutes error, "the prejudicial effect to be judicially determined."

The title to instruction MAI–CR 3.52 reads: "Impeachment or rehabilitation by prior statements of witnesses other than defendant." Obviously this is the way the instruction was intended to be considered by the jury. The phrase included in the court's instruction 10 was taken from the title of the instruction. It is mandatory, however, that the instruction be given as prescribed and the court here erred in failing to do so. *State v. Lomack*, 586 S.W.2d 90, 93–94[7, 8] (Mo.App.1979). Under the mandate of Rule 20.02(e), we determine the prejudicial effect of this error.

■ Defendant's first asserted ground of prejudice is that the modification of the instruction placed "undue and unnecessary stress" upon inconsistent prior statements of defendant and directed the jury to treat the statements differently than those of other witnesses. When an instruction tells the jury the purpose for which certain evidence may be considered and limits their consideration of it for such purposes, it is not a comment on the evidence. *State v. Griffin*, 336 S.W.2d 364, 368[8] (Mo.1960). As to the ground that he was prejudiced because the instruction modification exaggerated the importance of defendant's pre–trial statements, we examine the nature of the pre–trial statements in light of his testimony at trial. The defendant admitted at trial that he was present at the shooting but denied he played a part in it. His pre–trial statements were inconsistent with his in–court testimony in that he had told police officers that he was not at the apartment that night. If the jury did place undue stress upon the prior statements and

believed them to be true, they would have acquitted defendant. The prior statements could only work in appellant's favor and as such he is precluded from complaining on appeal. Rule 26.06(1) [in effect at the time of defendant's trial]; *State v. Lowery*, 565 S.W.2d 680, 683–684[1] (Mo.App.1978).

Defendant's third point relied on is likewise a challenge to the use of jury instruction number 10. Under this point, he contends that the instruction should not have been used at all because the inconsistent prior statements of witness Henderson were offered by the defendant without limiting them at the time to the purpose of impeachment, and the statements contain relevant evidence which could be considered by the jury as evidence of the matters contained in the statements.

■ As urged by defendant, the applicable note on use, that is n.2 under MAI–CR 3.52, states that the instruction should not be given if during the examination of a witness prior statements come into the case without limiting them at the time to impeachment purposes. *See State v. Nimrod*, 484 S.W.2d 475 (Mo.1972). The use of modified MAI–CR 3.52, however, was at the instance of the defendant who offered MAI–CR 3.52 as his instruction A and he requested that the instruction be given by the court. The court instead of giving MAI–CR 3.52 gave the modified version hereinabove set forth which modification has hereinabove been held not to be prejudicial. Defendant cannot now complain of an instruction which in substance was given at his instance. *State v. Adams*, 497 S.W.2d 147, 154[7] (Mo.1973). We should further point out that the statements made by the witness Henderson to the grand jury were consistent with her testimony at trial. In both instances she stated that she saw the defendant shoot Williams. Errors due to faulty instructions will cause reversal only when they prejudice the defendant. *State v. Pitchford*, 556 S.W.2d 57, 59[1] (Mo.App. 1977).

■ The defendant's next three points shall be considered together. He contends that it was an error to "instruct down" from felony murder to conventional first

degree murder to second degree murder to manslaughter because there was no evidence to support a jury instruction on any theory other than felony murder. It is our opinion that this is a case where instructions as to lesser included offenses should be given because of its facts. We need not discuss this, however, because at the conference held by the court and the attorneys representing defendant and the State, the court announced that it was giving these instructions as submitted by the State and also requested by the defendant. When the court dictated this into the record, no objection was made by the attorney for the defendant. If this had not been an accurate statement, counsel should have raised his objection then. As heretofore stated, it has long been the rule that a defendant cannot complain of an instruction given at his instance. *State v. Adams, supra.*

The judgment is affirmed.

STEWART, P.J., and SNYDER, J., concur.