STATE of Missouri, Respondent,

v.

Anthony LEISURE, Appellant.

No. 72482.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1990.

As Modified on Denial of Rehearing
Oct. 16, 1990.

Richard H. Sindel, St. Louis, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RENDLEN, Judge.

This appeal follows Anthony Leisure's manslaughter conviction in the bombing death of George "Sonny" Faheen. A divided court of appeals reversed the conviction with the majority basing their decision on *State v. Anding*, 752 S.W.2d 59 (Mo. banc 1988), deeming it reversible error to submit a manslaughter instruction as the evidence failed to support such submission. We affirm conviction.

The facts of this cause occurred amid a series of conspiracies and killings in the struggle between rival St. Louis factions for control of certain labor unions. This tapestry of crimes may be found detailed in *State v. Leisure*, 772 S.W.2d 674 (Mo.App. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990) (defendant's brother) and *State v. Leisure*, 749 S.W.2d 366 (Mo. banc 1988) (defendant's cousin).

The relevant events in the killing of Faheen began August 11, 1981, when defendant's brother, Paul Leisure, was the victim of a car-bombing in St. Louis, resulting in severe crippling injuries. Family members, including defendant, and "business" associates met to discuss who was responsible for the bombing and concluded that one of three groups must have committed the crime: the Italians, the Martins, or the Michaels. Defendant met with John Vitale, the leader of the Italian faction and was ·told the bombing was a "family" matter. It was later learned that the persons involved were Jimmy (Beans) Michaels, Jimmy Michaels III, John Michaels, Norm Peters, Bob Peters, Jack Issa, Milton Schepp and George "Sonny" Faheen. Armed with this information, defendant held a meeting at his mother's house and informed his associates to find the parties believed responsible. Several of these associates followed Faheen and from this surveillance determined where he worked, the car he drove and where he usually parked during the day. On October 16, 1981, members of the group, other than defendant, placed a dynamite bomb in Faheen's car, which exploded, killing Faheen when he entered his car later that day.

Defendant, though not present when the bomb exploded, was charged with capital murder and was tried on that charge January 25, 1988. Found guilty by the jury of only manslaughter, he was sentenced to ten years' imprisonment. During the instruction conference, the state and defendant's counsel each submitted instructions patterned on the MAI–CR instructions for capital murder, second degree murder *and manslaughter*. A protracted discussion ensued as to the use and form of the instructions, including that for manslaughter.

In addition to his request for a manslaughter instruction, defense counsel urged the giving of an abandonment instruction, but the state argued the evidence was insufficient to submit the latter; defendant claimed that, although there was evidence that he originally participated in planning Faheen's death, he withdrew on October 16 before the bomb was detonated. The abandonment defense rested on testimony of a state's witness that defendant phoned and said, "Hold up. Don't do it." This message was relayed to the conspirator who was to detonate the bomb, but apparently he ignored the message and proceeded with the killing.

■ The affirmative defense of abandonment can be raised if there is evidence that, before the commission of the offense, a defendant "abandons his purpose and gives timely warning to law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense." Section 562.041.2(3), RSMo 1986. It is

questionable whether defendant's statement alone was sufficient to justify submission of an abandonment instruction, *See, e.g., State v. O'Neal,* 618 S.W.2d 31, 36–37 (Mo.1981), *State v. Skillicorn,* 635 S.W.2d 82, 83–84 (W.D.Mo.App.1982); Comment, *Accomplice Liability under the 1979 Missouri Criminal Code,* 44 Mo.L. Rev. 233, 265–268 (1979), as no evidence was presented that defendant gave "timely warning to law enforcement authorities" and it is doubtful that defendant's phone call constituted a "proper effort" to prevent this brutal killing. But without deciding the point, we note the trial court, in an abundance of caution and erring (if error it was) in favor of defendant, decided to instruct on abandonment. Both sides tendered proposed verdict directing instructions on capital murder, second degree murder, and manslaughter. Though the state's instructions made no mention of abandonment, defendant's verdict directors included the abandonment "tail" provided by Notes on Use 10 to MAI–CR 3d 304.04.

The court rejected the initial verdict directing instructions submitted by the parties, opting instead to give verdict directors with an abandonment "tail" as required by Notes on Use 4 to MAI–CR 2d 2.16.[1] While expressing a preference for the instructions he had submitted, defense counsel, in reference to the MAI–CR 2d 2.16 abandonment "tail," stated, "I do want the instruction given under 2.16," and his only complaint was that the MAI–CR 2d 2.16 abandonment "tail" improperly shifted the burden of proof, a point not now raised. Defense counsel said: *"I don't want to lose the instruction* [i.e., verdict directing instruction pursuant to MAI–CR 2d 2.16], but I do want to say that I think it unconstitutionally shifts the burden of proof." (Emphasis added.)

■ After the court put the instructions in order and numbered them, defendant made objection to the refusal of his tendered instructions. Though his objections fill five and one-half pages of the transcript and many specific objections to instructions were raised, no objection was made to the giving of a manslaughter instruction other than counsel's statement: "I would object to the giving of all of the instructions."

Beyond question, defendant wanted and urged the giving of the manslaughter instruction. The situation was *not* one in which the trial court refused such instruction, thus raising a question of whether defendant was entitled to the same as a matter of law, nor one in which the trial court erred in giving the same without request or over the objection of defendant. Rather, the state and defendant each sought such instruction. The manslaughter instruction tendered by the state made no reference to abandonment while defendant's tendered instruction included the abandonment "tail" from MAI–CR 3d. The manslaughter instruction given by the court had an abandonment "tail" from MAI–CR 2d. Defendant, having proffered a manslaughter instruction with an abandonment "tail," is not in a position to complain that he was found guilty under an instruction he sought. *See State v. Nelson,* 459 S.W.2d 327, 334 (Mo.1970); *State v. Martin,* 56 S.W.2d 137, 139 (Mo.1932); *State v. Adams,* 497 S.W.2d 147, 154 (Mo. 1973); *State v. Euell,* 583 S.W.2d 173, 178 (Mo.1979); *State v. Preston,* 673 S.W.2d 1, 9 (Mo.1984).

This Court has long held that a defendant cannot complain of an instruction given at his request. *State v. Decker,* 326 Mo. 946, 33 S.W.2d 958, 962 (1930); *State v. Grubbs,* 358 Mo. 323, 214 S.W.2d 435, 437

1. This crime occurred in 1981, and the trial occurred in 1988. Verdict-directing instructions were appropriately patterned after MAI–CR 2d 15.00 series, because the homicide was committed after May 25, 1977, and before September 30, 1984.

As to the appropriate manner to instruct on abandonment, the trial court apparently had the option to follow the directions in MAI–CR 2d or MAI–CR 3d. As noted during the instruction conference, MAI–CR 3d does not contain an instruction on capital murder. Because the capital murder instruction was from MAI–CR 2d, the decision was made to follow the directions in MAI–CR 2d for instructing on abandonment.

(1948); *State v. Burchett*, 302 S.W.2d 9, 19 (Mo.1957); *State v. Crockett*, 419 S.W.2d 22, 25 (Mo.1967); *State v. Adams*, 497 S.W.2d 147, 154 (Mo.1973). *State v. Nelson*, 459 S.W.2d 327 (Mo.1970) dealt with a similar fact pattern, in which defendant, convicted of manslaughter, appealed alleging there was no evidence to support the manslaughter submission. The Court noted the instruction had been tendered by defendant and accordingly he was barred from complaining of such instructional error on appeal. *Id.* at 334. These cases for the most part involve situations in which the trial court submitted the exact instruction requested by the defendant. In this instance, the trial court, though rejecting defendant's version, gave an instruction substantially mirroring his request. There is no general requirement that the instruction given must precisely duplicate that requested for waiver of objection to occur. Rather, the question is whether the instruction given follows the lead and contains the essence of the defendant's tendered instruction, and, if so, defendant may not be heard on appeal to complain of the error he invited. *State v. Martin*, 56 S.W.2d 137, 139 (Mo.1932) (defendant complained of erroneous instruction but had asked for an instruction in almost identical language); *State v. Falbo*, 333 S.W.2d 279, 290 (Mo. 1960).

A more recent case closely on point comes from the Court of Appeals, Eastern District. In *State v. Davis*, 608 S.W.2d 437 (Mo.App.1981), defendant had been charged with felony murder and during the instruction conference the State urged the "instructing down" sequence of first degree murder, second degree and manslaughter jury instructions. This "instructing down" was also requested by defendant. The court announced it was going to give the State's instructions and defendant raised no objection to the fact that no evidence supported the manslaughter submission. Defendant, found guilty of manslaughter,

appealed and the Eastern District held that requesting the instruction for manslaughter, coupled with the fact defendant made no objection to its submission, barred defendant's complaint. *Id.* at 442.

In *State v. Belk*, 759 S.W.2d 257 (Mo. App.1988), the defendant submitted an instruction for manslaughter in a felony murder prosecution, which the trial court rejected but then submitted its own version under which defendant was convicted. The court of appeals determined that *State v. Anding, supra,* decided earlier that year, did not permit a defendant to complain on appeal of a manslaughter instruction given at the behest of defendant. *Id.* at 261.

In addition, § 545.030.1, RSMo 1986, has been the law in this state for more than one hundred years.[2] It provides, in part, that no criminal "trial, *judgment* or other proceedings *be ... in any manner affected:*

\*       \*       \*       \*       \*       \*

(16) For *any error committed at the instance* or *in favor of the defendant;* nor

(17) *Because the evidence shows or tends to show him to be guilty of a higher degree of the offense than that of which he is convicted....*

(Emphasis added.)

If the trial court erred in giving the manslaughter instruction, it was error committed at the instance of defendant, and most certainly he considered it in his "favor." Hence, it should not "in any manner" affect his conviction. Section 545.-030.1(16); *Nelson*, 459 S.W.2d at 334; *State v. Davis*, 608 S.W.2d 437, 441–442 (Mo.App.1980). The conviction for manslaughter may be upheld under these circumstances even though the evidence tends to show defendant to be guilty of a higher degree of homicide. Section 545.030.1(17).

In deciding this issue, it is appropriate to reiterate the Court's commentary in *State*

---

**2.** See § 1821, Article 16 (Indictments and Process Thereon), Chapter 24 (Of Crimes and Criminal Procedure), RSMo 1879.

*v. Goddard*, 649 S.W.2d 882, 889 (Mo. banc 1983), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 689 (1983):

> There would be a strange twist in the criminal law if a defendant who had the benefit of the jury's mercy could then use the resultant conviction as a basis for avoiding conviction on the higher offense charged, on the less serious offense of which he was convicted, and possibly, of any offense whatsoever.

We are unwilling to allow a defendant who urges upon the trial court a manslaughter instruction, which urging bespeaks a purpose to appeal to the jury's sense of mercy or mitigation, and then having taken the benefit of the same and thus having avoided conviction of the greater offense turns 180 degrees and entreats the appellate court to nullify the manslaughter conviction because of such "erroneous" instruction and thus adroitly escape conviction on any count.

■ Defendant next contends the manslaughter charge was time barred by the three-year statute of limitation embodied in § 556.036.2(1), RSMo 1978. The murder occurred October 16, 1981, and the indictment charging defendant was filed May 22, 1985. This span, greater than three years, exceeds the limitation period. However, two facts effectively undo defendant's argument: first, defendant's twenty-month absence from the state during the period of the statute, and second, defendant's waiver of the bar.

Defendant freely admits that for almost two years from July 23, 1983, until May 22, 1985, he was "held in St. Clair, Illinois in the custody of the United States Marshal." Section 556.036.6(1), RSMo 1986 provides that the "period of limitation does not run ... [d]uring any time when the accused is absent from the state." Defendant's arguments suggest no valid reason why this provision of the law is not controlling, and with the tolling of the statute during that period, the indictment was filed well within the statute's three year time frame and this complaint of error is denied.

■ As to waiver, while our research reveals no Missouri case holding that a criminal defendant may waive the time bar of the statute of limitation, clearly there is no constitutional prohibition to such a waiver. In *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), a defendant was held to have the option of waiving the expired statute of limitations on lesser included offenses that he might have the jury instructed on such charges. Similarly, in the civil arena, waiver of the bar of limitations has long been recognized. *Hickey v. Sigillito*, 162 S.W.2d 638 (Mo. App.1942). In the case *sub judice*, ruling as we have regarding submission of the manslaughter instruction, it would be jarringly inconsistent to allow defendant the option of gambling on the jury's sense of mitigation or mercy by submitting a manslaughter instruction and in so doing *sub silentio* waive the bar of limitation and then having received such merciful consideration at the hands of his peers, reverse his field, assert the bar and ask the Court on appeal to free him from all accountability.

■ Defendant's third contention is a "grocery list" objection to twelve separate bits of testimony which he characterizes as inadmissible hearsay. It is unnecessary to burden this opinion with the details of each alleged hearsay violation and our review of the evidence will center on the alleged prejudice, if any, flowing from admission of such evidence, *State v. Whitley*, 750 S.W.2d 728 (Mo.App.1988), as a conviction will not be reversed because of improper admission testimony which is not prejudicial to defendant. *State v. Fulkerson*, 331 S.W.2d 565 (Mo.1960). The burden is on defendant to show both the error and the resulting prejudice before reversal is merited, *State v. Clark*, 747 S.W.2d 197 (Mo.App.1988), and here we need not determine whether the complained of testimony is hearsay for defendant has failed to demonstrate prejudice.

The challenged evidence falls into four main categories. First, those which relate

to issues essentially irrelevant to the main issue of defendant's guilt in the bombing death of Faheen. This evidence, admissible or not, is rendered harmless by the overwhelming body of evidence establishing defendant's guilt. *See State v. Cook*, 628 S.W.2d 657 (Mo.1982). "Error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong." *State v. Ford*, 639 S.W.2d 573, 576 (Mo. banc 1982).

The second relates to testimony addressing issues fully proven by properly admissible evidence. Such is merely cumulative and is not shown to merit reversal. *See State v. Ousley*, 668 S.W.2d 643, 645 (Mo. App.1984).

■ The third category was statements of others introduced by the State to demonstrate the conduct of defendant. This testimony of what another said, when offered in explanation of conduct rather than as proof of the facts in the other's statement, is not inadmissible hearsay. *State v. Murray*, 744 S.W.2d 762, 773 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

■ The fourth category relates to the State's cross-examination of a defense witness. The prosecutor had asked the witness about her husband's convictions and pending criminal charges which arose from the same operative facts as those at bar. This was offered to demonstrate bias of the witness who might attempt perjury to indirectly aid her husband. Cross-examination of a witness to determine possible bias or motive is permissible and its parameters are within the broad discretion of the trial court. *State v. McNew*, 353 S.W.2d 571 (Mo.1961). We cannot say the trial court abused its discretion in allowing the prosecution to pursue this line of questioning as the witness' responses were sought not for the truth of the facts asserted but to demonstrate motivation. Such is not inadmissible hearsay. *Still v. Travelers Indemnity Co.*, 374 S.W.2d 95 (Mo.1963).

In sum, the evidence of which defendant complains, whether hearsay or otherwise, has not been shown to have resulted in prejudice requiring a reversal. *See State v. Montgomery*, 571 S.W.2d 784, 788 (Mo. App.1978). The point is denied.

■ Defendant next contends the trial court erred in not striking for cause a venireman who stated during voir dire that she would hold against defendant the fact that he would not testify in his own defense. This, defendant alleges, deprived him of a fair trial because he employed one peremptory strike to remove the venireman. The determination of whether to strike a venireman for cause is within the sound discretion of the trial judge, who is in a far better position to determine such matters than an appellate court. *State v. Olinghouse*, 605 S.W.2d 58, 69 (Mo. banc 1980). All doubts as to the trial court's findings are to be resolved in its favor. *Id.*

Though the venireman responded to defense counsel's questioning that she would find it a "problem" that the defendant would not testify on his own behalf, after a lengthy inquiry in which she was asked point blank by the trial court if she could follow the law on this matter, meaning she could not hold against the defendant the fact that he chose not to testify at trial, she responded she could. In stating his reasons for denying defendant's request to strike for cause the venireman, the trial court noted the venireman, though having voiced some concern over the issue, nonetheless assured the court she would follow the law and would not hold the defendant's silence against him. From a reading of the entire *voir dire* transcript, we cannot find the trial court abused its discretion. Point denied.

■ The final argument relates to § 1.160, RSMo 1986. Defendant was convicted of manslaughter under § 565.005, RSMo 1978, and that statute provides the maximum assessable punishment as ten years' imprisonment. In 1984, the manslaughter statute was altered to differentiate voluntary and involuntary manslaughter. Voluntary manslaughter, § 565.023,

RSMo 1986, is now a class B felony punishable by a sentence from five to fifteen years' imprisonment, and involuntary manslaughter, § 565.024, RSMo 1986, is a class C felony punishable by a sentence not to exceed seven years. Defendant asserts that § 1.160, RSMo, 1986, which provides "if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense, the penalty or punishment shall be assessed according to the amendatory law," limits his sentence to seven years under involuntary manslaughter because his conduct more closely approximates that crime.

Defendant's contention is meritless in light of § 565.001.2, RSMo 1986, which provides that on appeal for crimes committed prior to October 1, 1984, the courts are to review the provisions of Chapter 565 "according to applicable provisions of law existing prior to the effective date of this chapter in the same manner as if this chapter had not been enacted, the provisions of § 1.160 notwithstanding." Accordingly, defendant's contention fails because the range of punishment for his conviction under § 565.005, RSMo 1978 (the manslaughter section in vogue on October 16, 1981), is prescribed in § 565.031 as not less than two nor more than 10 years imprisonment for such crime.

BLACKMAR, C.J., ROBERTSON, HIGGINS, COVINGTON and HOLSTEIN, JJ., and PARRISH, Special Judge, concur.

BILLINGS, J., not sitting.