STATE of Missouri, Plaintiff–
Respondent,

v.

Danny BACON, Defendant–Appellant.

No. 17877.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 13, 1992.

Motion for Rehearing or Transfer to
Supreme Court Denied Oct. 29, 1992.

Application to Transfer Denied
Nov. 24, 1992.

Larry Maples, Joplin, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PARRISH, Chief Judge.

Danny Bacon (defendant) was found guilty, following a jury trial, of two counts of careless and imprudent driving (Counts I and II) and one count of assault in the third degree (Count III). The trial court imposed sentences of confinement for a term of one year in Count I, one year in Count II and six months in Count III. The sentences were concurrent. Defendant appeals from the convictions that were entered and the sentences that were imposed as to Counts I and II, the careless and imprudent driving offenses. This court reverses the convictions and sentences as to Counts I and II and remands the case with instructions that the trial court enter as part of the judgment herein conviction for one offense of careless and imprudent driving and that it proceed with sentencing with respect to that offense as, in its discretion, is permitted by law. Defendant has not appealed from the conviction and the sentence in Count III, the assault in the third degree offense. As to Count III, the judgment of conviction and sentence are affirmed.

Defendant was involved in an automobile accident that occurred July 3, 1989, in McDonald County. His automobile, a 1976 Chevrolet Monte Carlo, was traveling south on U.S. Highway 59. Traffic was heavy. As defendant's car proceeded along the highway, its "two passenger-side tires were off the road." The vehicle returned to the roadway and traveled toward a northbound pickup. The pickup swerved. Defendant's vehicle turned away from the pickup and headed toward the edge of the roadway. It then changed its course of travel and headed back toward the center of the roadway. It struck a northbound Chevrolet Astro van (the first van) "on the driver's side of the van just [to the] rear of the driver's door." Another van, a Ford Aerostar (the second van), was following the first van. The Monte Carlo then struck the second van. Both the Monte Carlo and the second van were in the northbound lane, the lane of traffic of the van, at the time of the second collision.

Both of the vans that were struck by the Monte Carlo were occupied by members of a family who were returning from a picnic and family outing. The driver of the second van, Denise Afshar, died from injuries that she received from the accident. Another passenger in the second van, Pauline Branham, Denise's mother, was killed in the accident.

Other persons who were riding in the vans were injured, including Bridgett Afshar, Denise's daughter. Bridgett was a passenger in the second van, the van that her mother was driving. She was three and one-half years old at that time. Her injuries required that she be hospitalized for a week following the accident. Count III was directed to the injuries that she sustained.

The Monte Carlo's skid marks were measured at the scene of the accident. The skid mark left by the right front tire was 188 feet long. There were 55 feet of skid marks left after both front tires began skidding.

The offense of careless and imprudent driving of which defendant was found

guilty was based upon § 304.010.1.[1] Verdict-directing instructions on that offense were submitted to the jury as a lesser included offense of each of two involuntary manslaughter charges in Counts I and II. Count I related to the death of Denise Afshar. Count II related to the death of Pauline Branham.

Section 304.010.1 provides:

Every person operating a motor vehicle on the highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

Violations of § 304.010.1 are punishable in the manner prescribed by § 304.570, RSMo1986.

The elements that the jury was told it had to find beyond a reasonable doubt in order to find defendant guilty of careless and imprudent driving were:

First, that on or about July 3, 1989, in the County of McDonald, State of Missouri, the defendant operated a motor vehicle on Highway 59, a public highway, and

Second, that defendant drove at an excessive rate of speed, and

Third, that defendant thereby endangered the life or limb of any person, and

Fourth, that in doing so the defendant operated the motor vehicle in a careless and imprudent manner, ....

For defendant's first point on appeal, he contends that there was insufficient evidence from which the jury could have found that he was driving the automobile that collided with each of the two vans. He further claims that there was insufficient evidence to prove the automobile was driven at an excessive rate of speed; to prove that the automobile was driven at a rate of speed that endangered the life or limb of any person; or that proved the automobile was driven in a careless and imprudent manner.

In assessing the evidence to determine its sufficiency to support a verdict, this court must consider the evidence favorable

---

**1.** References to statutes are to RSMo Supp.1987    unless otherwise stated.

to the verdict, together with all favorable inferences that may be derived therefrom, and disregard evidence and inferences to the contrary. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984). In so doing, the determination to be made is "whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged." *State v. Dunavant*, 674 S.W.2d 685, 686 (Mo.App.1984).

Evidence was adduced that according to the records of the Missouri Department of Revenue, Motor Vehicle Bureau, defendant owned the Monte Carlo;[2] that defendant had been driving an automobile at a location a short distance from where the crash occurred shortly before the time of the accident—the person who saw defendant driving an automobile did not recall the type of automobile he was driving. Considering that evidence, together with testimony that immediately after the accident defendant was lying in a ditch alongside his car on the driver's side of the vehicle "about five or ten feet from the Monte Carlo"; that defendant complained of back pain after the accident; that defendant said "something about either he had had tire trouble or he was going to get a tire—something about a tire," or "something to [the] effect that he had had a blowout or he thought he'd had one"; and that defendant was transported from the accident scene to the hospital in the same ambulance in which one of the passengers in the second van, Farzin Afshar, was transported; reasonable persons could have found that defendant was driving the Chevrolet Monte Carlo at the time it was involved in the accident.

Corporal J.D. Biram, a Missouri State Highway Patrolman, testified regarding the speed of defendant's vehicle. At the time of the trial, Corporal Biram was assigned as an instructor at the Highway Patrol Academy. His professional training included ninety hours of training on accident investigation that he received as part of the Highway Patrol Academy training for recruits—he graduated from the Academy in 1978. In 1982 he attended an accident investigation school at the Academy.

He received additional training at the Academy in 1984 when he attended a two-week advanced accident investigation school. Corporal Biram also attended a two-week curriculum at the Institute of Police Technology and Management (IPTM) in Jacksonville, Florida. He was certified by IPTM "as an accident reconstructionist." Biram had also "spent 12 years as an officer in the field working accidents."

Corporal Biram estimated that he had investigated "[p]robably somewhere between 750 and 1,000" accidents. He testified that there were "generally accepted methods among accident reconstructionists for determining the minimum speed of vehicles." He explained that this involved applications of formulas to the length of skid marks left by vehicles; that in order to determine the minimum speed of a vehicle, he needed two things. "[T]he first is the skid distance, and we obtain that by averaging the skid distance from the accident vehicle. The other thing that's necessary is what's called the drag factor or the coefficient of friction of the road surface itself."

Based upon the skid marks at the accident scene, Corporal Biram calculated that if defendant's automobile had been able to come to a complete stop without striking any other object, the automobile would have been traveling a minimum of 55.2 miles per hour at the place where the skid marks began.

In addition to Corporal Biram's testimony, the jury heard evidence that, in route to collision with the second van, defendant's car struck the first van, then struck the second van with a force that knocked the second van twelve feet backwards where it was stopped by a guardrail along the highway. There was testimony that the Monte Carlo came to rest 25 feet, 6 inches from the point where it struck the second van. There was further testimony that "[t]here was a constant string of traffic." One witness estimated the speed that the vans were traveling to be "45 to 50."

2. Records reveal that Danny Bacon and Sherry Bacon owned the vehicle on July 3, 1989.

■ Before the accident, defendant's automobile had appeared to be going toward a pickup in front of the two vans. The pickup swerved, then the Monte Carlo went back toward the side of the road. It then came back toward the first van, striking it, then struck the second van. Considering the path of defendant's automobile, the amount of traffic, and the force of the impact of the automobile with the second van, reasonable persons could have concluded that the Monte Carlo was being driven at an excessive rate of speed under the conditions that then existed, and that defendant's conduct thereby endangered the lives and limbs of the persons who occupied the two vans that the automobile struck.

The offense of careless and imprudent driving is a separate and distinct offense distinguishable from other offenses created by statutes regulating the operation of automobiles. Section 304.010.1 creates a blanket-type offense and is a salutary statute to cover the multitude of situations which may arise from the operation of a motor vehicle which cannot be detailed in specific statutes. To constitute the offense, there must be conduct which shows that under all the circumstances and under the conditions existing at the time, the property of another or the life or limb of a person is endangered. When such conditions and circumstances are shown, the offense is complete.

*State v. Kaikkonen,* 756 S.W.2d 643, 645–46 (Mo.App.1988) (citations omitted).

Reasonable persons could have found that defendant operated his automobile in a careless and imprudent manner. Defendant's first point is denied.

Defendant's second point on appeal contends that the trial court erred in accepting guilty verdicts and in sentencing defendant on two counts of careless and imprudent driving. Defendant asserts that the trial court "violate[d] the defendant's right to be free from double jeopardy in that the facts

underlying each charge of careless and imprudent driving were exactly the same facts and exactly the same acts of driving, and therefore the convictions and the sentences constitute two convictions and two sentences for exactly the same acts, a result prohibited by the constitutional prohibition of double jeopardy."

In *State v. Thompson,* 610 S.W.2d 629, 634 (Mo.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 122 (1981), the court, quoting from *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), explained the protections against double jeopardy afforded by the Fifth Amendament:

" * * * [T]he Fifth Amendment guarantee against double jeopardy * * * has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. * * *."

Defendant contends that he was denied protection against multiple punishments for the same offense.

■ The Fifth Amendment to the United States Constitution is enforceable against the states by reason of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Another prohibition against double jeopardy, albeit a more restrictive prohibition, is found in the Missouri Constitution.[3] Additionally, the common law rule that "no person shall for the same offense be twice put in jeopardy" is applicable in Missouri. *State v. Toombs,* 326 Mo. 981, 34 S.W.2d 61, 63 (1930). It "precludes a second conviction and punishment for the same offense." *Toombs,* 34 S.W.2d at 63; *see also State v. Taylor,* 807 S.W.2d 672, 674 (Mo. App.1991).

---

**3.** The Fifth Amendment to the U.S. Constitution includes the provision that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The more limited language of the Missouri Constitution states,

"nor shall any person be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury." Mo. Const. art. I, § 19.

■ The state contends that there were two offenses. It bases that contention upon the words "any person" included in the language of § 304.010.1. Section 304.-010.1 was previously quoted and is again noted marginally for reference.[4] The state argues that "[e]ach offense requires proof not required in the other offense, i.e.[,] the identity of a victim."

In *State v. Todd*, 477 S.W.2d 725 (Mo. App.1972), the court explained what constitutes commission of the offense of careless and imprudent driving in violation of a prior revision of § 304.010.1. The prior revision that was applicable in *Todd*, RSMo1969, is identical to the current revision applicable to this case. *See Todd*, 477 S.W.2d at 727 n. 1.

> The general rule, to be responsible for careless and imprudent driving, is that an act which is made a separate offense, or which may not be a separate offense in itself, cannot be punished as careless and imprudent driving unless the act, in connection with other circumstances constitutes careless driving. *State v. Tevis*, [340 S.W.2d 415, 418–19 (Mo.App.1960)]. To constitute the offense there must be conduct which shows under all the circumstances and under the conditions existing at the time, that the property of another or the life or limb of any person is endangered. When such circumstances and conditions are shown, the defendant has been found guilty of careless driving. *State v. Tevis, supra; State v. Richards*, [429 S.W.2d 351 (Mo. App.1968)]; *State v. Cipolla*, 437 S.W.2d 162 [ (Mo.App.1968)].

*Id.* at 728–29.

In order for there to be a careless and imprudent driving violation that is contrary to § 304.010.1, the property of a person other than the driver of the automobile, or the life or limb of *any* person must have been endangered. The life or limb of more than one person may have been endangered by reason of a single act of driving a motor vehicle. That alone does not give rise to more than one offense. It is endangerment to life and limb that causes an act of careless driving to be violative of § 304.-010.1, not the infliction of injury upon a particular person. The presence of one or more persons at the time an act of careless driving occurs at a location where they are endangered constitutes "other circumstances" that makes careless driving a violation of the statute. *Todd*, 477 S.W.2d at 728. The act of careless driving and the existence of those circumstances produce the offense, not the act and the infliction of a particular injury or harm.

There was one act of driving. The jury found that the driving was at excessive speed; that the act endangered life and limb of one or more persons; and that the defendant, by so driving, operated his vehicle in a careless and imprudent manner. The state's contention that the facts show more than one offense is erroneous.

The state further argues, however, that even if there were only one offense of careless and imprudent driving, other acts of defendant preclude him from now asserting his claim of double jeopardy. The state argues that by submitting the two lesser included offense verdict-directing instructions on careless and imprudent driving, defendant waived the right to assert a claim of double jeopardy. The state also argues that defendant's efforts to assert a double jeopardy claim amounts to his challenging the instructions that were given at his request on appeal.

Defendant requested the trial court to instruct the jury on careless and imprudent driving as a lesser included offense. He submitted the instructions that were used. He submitted, and the trial court gave, a lesser included verdict-directing instruction in both of the counts of involuntary manslaughter—Count I that arose as a result of the death of Denise Afshar and Count II that arose as a result of the death of Pauline Branham.

■ The state correctly points out in its brief that a defendant in a criminal case

---

**4.** Every person operating a motor vehicle on the highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of *any person* and shall exercise the highest degree of care. (Emphasis added.)

can waive immunity from double jeopardy. That principle was recognized by this court in *Raaf v. State*, 793 S.W.2d 211 (Mo.App. 1990), and *Horsey v. State*, 747 S.W.2d 748 (Mo.App.1988). In those cases, constitutional immunity against double jeopardy was acknowledged to be a personal right that is regarded as waived if not raised at trial. *Raaf*, 793 S.W.2d at 212; *Horsey*, 747 S.W.2d at 754. The state relies on those cases as authority for its claim that this defendant has waived his right to claim protection against double jeopardy. However, the circumstances in *Raaf* and *Horsey* regarding waiver of a defendant's protection against double jeopardy differ from those in this case.

*Horsey* is an appeal from an order denying a motion for post-conviction relief, a Rule 27.26 (repealed) motion. The motion was denied without an evidentiary hearing. The underlying criminal charges in *Horsey* were six counts of receiving stolen property. Horsey had been found guilty of each count. He was sentenced on each count to imprisonment for seven years. The sentences were ordered to be served consecutively. *See State v. Horsey*, 676 S.W.2d 847 (Mo.App.1984). In his post-conviction motion, Horsey complained that he was subjected to double jeopardy. He argued that "one offense of 'Receiving Stolen Property'" had been "broke[n] ... down into six (6) separate charges in the indictment." 747 S.W.2d at 750. This court held that Horsey was not subjected to double jeopardy, that receipt of stolen property from different owners and received by a defendant at different times constituted separate offenses of receiving stolen property. *Id.* This court further acknowledged, in *Horsey*, "as yet another reason the movant's allegation of double jeopardy did not call for an evidentiary hearing," that constitutional immunity from double jeopardy was a personal right that, if not affirmatively pleaded at the trial, would be regarded as having been waived. *Id.* at 754.

*Raaf* was also an appeal from an order that denied a motion for post-conviction relief,[5] a Rule 24.035 motion. Raaf pleaded

guilty in the underlying criminal case to charges of transportation and possession of cocaine and carrying a concealed firearm. This court held that Raaf's attempt to raise a double jeopardy question was not cognizable in that the "issue was not raised in the trial court either before the plea or in movant's motion." 793 S.W.2d at 212.

This case is a direct appeal from a judgment of conviction and sentences in a criminal case, rather than an appeal from an order denying a motion for post-conviction relief. Prior to sentencing, defendant filed a Motion For Judgment Of Acquittal Or In The Alternative For A New Trial that included the following:

> Defendant requests that the Court enter a judgment of acquittal as to Count I of the charge of careless and imprudent driving or in the alternative a judgment of acquittal as to Count II on the charge of careless and imprudent driving. Said charges are identical in every respect and conviction of both offenses violates defendant's right to be free from double jeopardy as guaranteed to him by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the Missouri Constitution and by *Mo.Rev.Stat.Sec.* 546.360 (1986) defendant's right not to be punished twice for the same offense as guaranteed by the above constitutional provision. See *Grady v. Corbin*, [495 U.S. 508] 109 L.Ed.2d 548 [109 L.Ed.2d 548] (1990).

■ "The double jeopardy protection against multiple punishments does not arise until the time of sentencing." *State v. Taylor, supra,* at 675. Here, guilty verdicts were returned on the offense of careless and imprudent driving as a lesser included offense of each involuntary manslaughter charge. Defendant's Motion For Judgment Of Acquittal Or In The Alternative For A New Trial was timely filed prior to the entry of judgment and sentencing. That motion contained the request, quoted above, that judgment and sentence be imposed for a single offense of careless and imprudent driving because the lesser included offenses in Counts I and II were

---

**5.** In *Raaf*, unlike *Horsey*, an evidentiary hearing    had been held in the motion court.

identical and multiple sentencing would subject defendant to double jeopardy. The double jeopardy issue was timely raised in the trial court and was denied. It was not waived.

■ The remaining issue that the state contends is applicable for the purpose of denying defendant's appeal is the principle that "a defendant cannot complain of an instruction given at his request." *State v. Leisure,* 796 S.W.2d 875, 877 (Mo. banc 1990). This contention fails, however, for two reasons. First, as previously observed, the double jeopardy protection against multiple sentences is related to the sentencing part of a criminal trial; therefore, defendant's complaint is directed to what he claims were erroneous sentences. It is not directed to the verdict-directing instructions for the lesser included offense of careless and imprudent driving. Second, the method followed by defendant in formatting the verdict-directing instructions for the lesser included offense of careless and imprudent driving followed the procedure that was utilized throughout MAI–CR 3d as it existed at the time of his trial.[6] Defendant should not be placed in jeopardy for having followed the only directions that were in MAI–CR 3d at the time of trial.

The following are directions that appear in paragraph 3 of Notes on Use to MAI–CR 3d 304.02 regarding the format that is to be used in submitting verdict-directing instructions on lesser included offenses:

.    .    .    .    .

(b) For each lesser graded or lesser included verdict directing instruction, the introductory paragraphs will read:

If you do not find the defendant guilty of [name of offense from immediately higher verdict director] as submitted in Instruction No. ___, you must consider whether he is guilty of [name of offense from the lesser verdict director] under this instruction.

.    .    .    .    .

This court, in reviewing MAI–CR 3d as it existed at the time of the trial of this case,[7]

found no directions for submitting verdict-directing instructions for lesser included offenses in any other format than that described above.

Since the time of trial, however, there have been revisions to MAI–CR 3d. The effective date of those revisions was "10-1-92." They include a different format for submitting a single lesser included offense of multiple "higher" offenses. The format appears in at least two places in the 10-1-92 revisions, in the Notes on Use to MAI–CR 3d 319.14 and at MAI–CR 3d 350.06 in the "Example: Multiple Counts of Manslaughter: Involuntary: Driving While Intoxicated and Assault in the Second Degree: Driving While Intoxicated." Although the 10-1-92 revisions do not alter the outcome of this appeal, it is appropriate to discuss those revisions in order to assure that the method used in this case in instructing on a single lesser included offense is not followed in the future.

Paragraph 3 of the revised Notes on Use to MAI–CR 3d 319.14 directs that the single lesser included offense—in the example, D.W.I.—should be submitted "as a lesser offense in only one count." It directs that one count of the higher offense—in the example, Assault in the Second Degree—be selected and that the lesser included offense that is applicable to more than that count begin as follows:

As to Count ___, if you do not find the defendant guilty of _____ under Count ___ as submitted in Instruction No. ___, and you further do not find the defendant guilty of _____ under Count ___ as submitted in Instruction No. ___, (and you further do not find the defendant guilty of _____ under Count ___ as submitted in Instruction No. ___), you must consider whether he is guilty of driving while intoxicated under this instruction.

Paragraph 3 directs that this instruction be given only once, following the verdict-directing instructions for the higher offenses upon which the jury is instructed. It fur-

---

6. Rule 28.02(d) includes the directive, "All instructions, where possible, shall follow the format of MAI–CR instructions, including the skeleton forms therein."

7. The trial of this case took place October 7, 1991.

ther refers to the example MAI–CR 3d 350.06. Additionally, paragraph 3 states that when this introductory paragraph is used, the "verdict possibilities" instruction that relates to one defendant who is charged with multiple offenses in separate counts—MAI–CR 3d 304.12[8]—should not be given.

The example in MAI–CR 3d 350.06 (that example did not appear in MAI–CR 3d prior to the 10–1–92 revisions) uses the same format that is set forth above. The offenses used for purposes of the example are separate counts of involuntary manslaughter and two counts of assault in the second degree with a single lesser included offense of D.W.I.

With the information now available in paragraph 3 of the Notes on Use to MAI–CR 3d 319.14 and the MAI–CR 3d 350.06 Example by reason of the 10–1–92 revisions, it would no longer be appropriate to give two lesser included verdict-directing instructions under the facts of this case. Rather, one lesser included verdict-directing instruction would be given. It would follow the verdict instruction for involuntary manslaughter in Count II and would include an introductory paragraph in a format similar to that explained in paragraph 3 to Notes on Use to MAI–CR 3d 319.14 (10–1–92 revision). No MAI–CR 3d 304.12 "verdict possibilities" instruction would be given.

Defendant's second point is well-taken with respect to his claim of trial court error in entering convictions and imposing sentences for two offenses of careless and imprudent driving. The convictions and sentences for careless and imprudent driving in Count I and in Count II are reversed. This case is remanded to the trial court with directions to enter, as part of the judgment in the case, conviction for one offense of careless and imprudent driving and to then proceed with the sentencing of defendant. The conviction that was entered and the sentence that was imposed

with respect to Count III was not appealed and is thereby affirmed.

SHRUM, J., concurs.

CROW, P.J., concurs in part and dissents in part in separate opinion filed.

CROW, Presiding Judge, concurring in part and dissenting in part.

I concur in the majority opinion's affirmance of the assault conviction. I respectfully dissent in the majority opinion's treatment of the two careless and imprudent driving convictions.

I do not dispute the majority opinion's articulate analysis of double jeopardy. I simply believe Defendant waived his double jeopardy claim by requesting, and receiving, a verdict-directing instruction on careless and imprudent driving as a lesser offense to each count of involuntary manslaughter.

An analogous situation arose in *State v. Leisure*, 796 S.W.2d 875 (Mo. banc 1990). There, the accused was charged with, and tried for, capital murder. He sought, and received, a verdict-directing instruction on manslaughter as a lesser-included offense. The jury found him guilty of manslaughter. On appeal, he maintained he should be freed because the manslaughter charge was time-barred. The Supreme Court of Missouri rejected the argument, noting there is no constitutional prohibition against waiving the protection of a statute of limitations. *Id.* at 879. The opinion continued:

In the case *sub judice* ... it would be jarringly inconsistent to allow defendant the option of gambling on the jury's sense of mitigation or mercy by submitting a manslaughter instruction and in so doing *sub silentio* waive the bar of limitation and then having received such merciful consideration at the hands of his peers, reverse his field, assert the bar

8. MAI–CR 3d 304.12 is the "verdict possibilities" instruction that is otherwise given when one defendant is charged with multiple counts. It instructs the jury to "return a verdict for each count" and that it "can return only one verdict for each count." Since the introductory para-

graph to which paragraph 3 of the Notes on Use to MAI–CR 3d 319.14 requires that the jury must have found the defendant not guilty on all counts of the higher offense before it can consider whether the defendant committed the lesser included offense, 304.12 is unnecessary.

and ask the Court on appeal to free him from all accountability.

*Id.* at 879[4].

I would apply the same rationale here, and hold that by requesting a lesser-offense instruction on careless and imprudent driving with respect to each manslaughter count, Defendant waived any complaint that convicting him of two counts of careless and imprudent driving violates his constitutional protection against double jeopardy.

I would affirm the judgment in all respects.