STATE of Missouri, Respondent,

v.

Curtis T. YEAGER, Appellant.

No. WD 59310.

Missouri Court of Appeals, Western District.

Dec. 26, 2001.

Jeremiah W. (Jay) Nixon, Attorney General, Audara L. Charlton, Assistant Attorney General, Jefferson City, for Respondent.

John M. Schilmoeller, Assistant Appellate Defender, Kansas City, for Appellant.

Before HOWARD, P.J., and BRECKENRIDGE and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

A jury convicted Curtis T. Yeager ("defendant") of one count of abuse of a child, § 568.060, RSMo Cum.Supp.1997, and one count of second-degree felony murder, § 565.021.1(2), RSMo 1994. Abuse of a child served as the underlying felony to support the murder conviction. The court sentenced him to serve concurrent terms of twenty years imprisonment for the murder and ten years for abuse of a child.

On appeal, defendant contends that the evidence was insufficient to establish that the child's death was not the result of an accident.

Finding the evidence sufficient to sustain defendant's convictions, we affirm.

### Standard of Review

 Upon review of defendant's challenge to the sufficiency of the evidence, we must determine if the State presented sufficient evidence from which a reasonable juror could have found defendant guilty beyond a reasonable doubt. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 567, —— L.Ed.2d —— (2001). This standard of review requires that we:

> "must look to the elements of the crime and consider each in turn.... [The Court is] required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. [The Court] disregard[s] contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. Taking the evidence in this light, [the Court] consider[s] whether a reasonable juror could find each of the elements beyond a reasonable doubt."

*Id.* (quoting *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993)). Despite our review in deference to the State's evidence, we cannot " 'supply missing evidence, or give the [State] the benefit of unreasonable,

speculative or forced inferences.'" *Id.* (quoting *Bauby v. Lake,* 995 S.W.2d 10, 13 n. 1 (Mo.App. E.D.1999)).

### Relevant Statutes

The statutes under which defendant was charged and convicted follow:

Second-degree felony murder is defined by the legislature in section 565.021.1(2) RSMo 1994, as follows:

1. A person commits the crime of murder in the second degree if he:

\* \* \*

(2) Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

Here, the felony underlying defendant's murder conviction was abuse of a child, section 568.060 RSMo Cum.Supp.1997, which reads:

1. A person commits the crime of abuse of a child if such person:

(1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old;

\* \* \*

3. Abuse of a child is a class C felony, unless:

\* \* \*

(2) A child dies as a result of injuries sustained from conduct chargeable pursuant to the provisions of this section, in which case the crime is a class A felony.

### Felony Murder

■ Under the felony murder rule, the felonious intent necessary for a murder conviction may be shown by the commission of or attempt to commit a felony. *State v. Bouser,* 17 S.W.3d 130, 135 (Mo. App. W.D.1999). Upon proof that the defendant intended to·commit the underlying felony, there arises a conclusive presumption of the necessary intent to support a conviction for the resulting murder. *Id.* Put in another way, the rule requires that:

the state must prove every element of the underlying felony beyond a reasonable doubt. This is because the underlying felony is necessary in proving the intent element of felony murder. The felony murder rules make the underlying felony not an element of the felony murder, but rather a means of proving the felonious intent for murder.

*State v. Gheen,* 41 S.W.3d 598, 605 (Mo. App. W.D.2001) (citations omitted). Thus, we consider whether the evidence was sufficient for a finding beyond a reasonable doubt that defendant committed the offense of abuse of a child under section 568.060 RSMo Cum.Supp.1997, and the child died as a result of the perpetration of that felony.

### Facts

The evidence presented at trial, viewed in a light most favorable to the verdict, follows:

Defendant lived with his parents and sister at 5500 E. 101st Terrace in Kansas City, Missouri. At the time of the incident in question, his girlfriend and her eleven-month-old son ("the child") had also been living there for at least two months.

On the morning of October 11, 1999, the child was left alone with defendant at the house around 8:45 a.m. At around 9:20 a.m., defendant called his mother to report that there was something wrong with the child. A few minutes later, defendant called 911. The fire department and an ambulance arrived in response to the call.

When Captain Thomas of the fire department first arrived at the residence, he found defendant and the child. The child was not breathing, so CPR was begun while defendant provided background information about the child, such as his history of asthma and that the child had been playing on the floor when defendant discovered he was not breathing. When the ambulance arrived, paramedics intubated the child in an attempt to help him breathe. The child's lips were turning blue but his fingernail beds were still pink, indicating that he had not gone without oxygen for long and had recently stopped breathing.

The child was first taken to St. Joseph Hospital. The EMT paramedic and police officer who were at St. Joseph Hospital reported that the child had multiple bruises on his body, including his wrists, abdomen, bottom lip, chin and back area in addition to injuries around his eyes. Soon thereafter, the child was transferred to Children's Mercy Hospital for treatment of a head injury. Testimony later established that these injuries were not the result of emergency attempts to resuscitate the child.

The child died the next day, October 12, 1999. Dr. Thomas Young, the Jackson County Medical Examiner, performed an autopsy on the child the following day, October 13, 1999. During the autopsy, Dr. Young observed that the child had bruising to both sides of his face, on the underside of his lips, underneath his chin, on his left shoulder, left arm, chest, abdomen, right leg, and behind his left ear. He also suffered from various internal injuries including bruising in his deep scalp and a "complex fracture" at the back of his skull which consisted of fractures that extended up from the base of his skull and branched off into smaller fractures. In addition, the child suffered retinal hemorrhaging and bleeding along the retinas and optic nerves in his eyes, brain swelling, and both subdural (between the brain and inner surface of the skull) and subarachnoid (beneath the filmy covers of the brain) bleeding or hemorrhaging.

Dr. Young testified that the child's injuries were consistent with child abuse. He stated that under normal conditions, a child of the child's age does not have the number and variety of injuries that the child did. The bruises were likely an indication that the child had been forcefully grabbed. His skull fracture must have resulted from a "very, very forceful blow" to the head. The fracture was not consistent with a fall from a chair (as defendant had claimed the child received the injuries) and was more consistent with an "acceleration/deceleration" injury, which Dr. Young described as taking a child and "swinging him to the impact" or striking him against a firm object. The hemorrhaging was consistent with a moving head striking a stationary object. The results also showed that the child's injuries had been recently inflicted, as they showed no signs of healing. Dr. Young testified that with the extensive injuries he observed, the child would have quickly gone into a coma or seizures because his brain would have immediately begun to swell and push down to the hole in the bottom of the skull resulting in "instant" and "irreparable" brain damage. Again, Dr. Young testified that the child's injuries were not consistent with injuries one would see from normal, child-related accidents such as falling from a chair and landing on his head and were consistent with having occurred on October 11, 1999.

After the child died, Detective Keideman *Mirandized*[1] defendant and obtained his

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

statement. Defendant explained that the day before the child was taken to the hospital, he and the child's mother were in the living room with the child. Both adults left the room for a short period of time. Just before defendant left the room, he saw the child, who had just begun walking, trying to climb a rocking chair. Defendant heard a noise, and when he returned to the living room, it appeared to him that the child had fallen out of the chair. Defendant stated that the child was cranky the rest of the evening. The child fought going to sleep and was restless throughout the night. The next morning, the child's mom woke defendant and then left for work with defendant's sister. The child was crying and cranky, so defendant fed him and laid him back down with a bottle. Defendant lay next to the child and rubbed his head when the child began to cry again. Although defendant's sister offered to help care for the cranky child, defendant declined. He stated that he went out and had a few cigarettes and then decided that the child was not tired. He then gave the child a shower (there was apparently no bathtub in the house), wrapped him in a towel, placed him on the living room floor, and went in the other room to get the child's clothes. When defendant returned, the child was unresponsive and appeared to have food coming out of his mouth. Defendant called his mom, and she agreed to come right home. In the meantime, defendant noticed that the child stopped breathing, so he called 911 and tried to do CPR. Defendant admitted that he was the only one in the house with the child at the time.

Detective Keideman then arrested defendant. He was charged with and convicted of one count of abuse of a child, section 568.060 RSMo Cum.Supp.1997, and one count of second-degree felony murder, section 565.021.1(2) RSMo 1994.

**Discussion**

Defendant's point on appeal purports to challenge the sufficiency of the evidence. However, his arguments essentially go to the weight of the evidence, factual conflicts, and witness reliability and credibility—matters which are left to the province of the jury. *State v. O'Haver*, 33 S.W.3d 555, 559 (Mo.App. W.D.2000).

Primarily, defendant seeks to pick apart the testimony of Dr. Young, which testimony he says the State's case "hinged on." He claims that the State failed to "show beyond a reasonable doubt that defendant committed any acts of abuse against the child. Nor did the evidence show that [defendant] committed any specific act that would cause blunt force trauma to [the child]." He then points out parts of Dr. Young's testimony which he claims are mere speculation and do not "support a finding beyond a reasonable doubt that defendant caused these injuries, or when these injuries occurred, or how the injuries were sustained."

For example, defendant claims that Dr. Young found bruises on multiple areas of the child's body but could not identify how or when such injuries occurred or who inflicted them. Defendant refers to a St. Joseph ER doctor's report of no external injuries apparent on the child when he arrived there. He claims that Dr. Young's "speculations" with regard to the injuries and how they occurred "only showed that [the child] possibly sustained his head injuries at about the time that he was with [defendant]; it does not establish how the injury occurred, or who, if anyone, caused the injury." Defendant contends that "in light of the evidence presented, it is clear that no one really knows what happened to the child that caused the injuries to his head, and ultimately his death. It could have been an accident or the act of a

person." He claims that nothing in the evidence, however, showed beyond a reasonable doubt it was defendant who caused the child's injuries.

■ Again, his arguments are primarily directed toward conflicting evidence and witness credibility issues, which are matters left to the jury. Viewing the evidence in a light most favorable to the verdict, we find that the evidence was sufficient to support the jury's convictions. Dr. Young testified that usually small children of the child's age do not have the number and variety of injuries that the child did, that the injuries were consistent with child abuse, and that the injuries he found were consistent with being inflicted on October 11, 1999, in the morning hours of 8:45 to 9:15 a.m.—when defendant was alone with the child. As set forth above, Dr. Young also dispelled defendant's claims that the child's injuries were the result of a fall from a chair the day before. His testimony established that the child would not have been active after suffering such severe injuries. Defense counsel extensively cross-examined Dr. Young, bringing all of the factual issues he now raises on appeal to the jury's attention. When defense counsel repeatedly questioned Dr. Young regarding his unwillingness to say he was 100 percent sure of what happened, Dr. Young consistently stated that he was certain within a reasonable degree of medical certainty. Emergency workers and police who were involved in the child's case also testified. Their testimony established that the child did indeed have bruising when he first arrived at St. Joseph Hospital, thus disputing the records indicating to the contrary. Again, matters of credibility and conflicting evidence are for the jury to determine. *O'Haver*, 33 S.W.3d at 559. A juror could reasonably infer, from the collective impact of this evidence, that defendant was guilty of abuse of a child and second-degree felony murder. *See, e.g., State v. Yoksh*, 989 S.W.2d 227, 232 (Mo.App.W.D. 1999) (finding that the medical and circumstantial evidence with regard to the death of the child victim was sufficient to support the jury's conviction of murder in the second degree under section 565.021.1(1) RSMo 1994.)

Defendant's point on appeal is denied.

### Conclusion

Among other evidence, Dr. Young's testimony, coupled with that of the emergency personnel and police who were involved in the case, provided substantial evidence from which the reasonable juror could logically infer that defendant inflicted the child's injuries that resulted in his death. Thus, the trial court did not err in overruling defendant's motions for judgment of acquittal, and we affirm the trial court's judgment.

BRECKENRIDGE and NEWTON, JJ., concur.