

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | )    **WD78092** |
| v. | ) |
| | )    **OPINION FILED:** |
| | )    **January 26, 2016** |
| JONATHAN L. FIELDS, | ) |
| | ) |
| Appellant. | ) |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Joel P. Fahnestock, Judge

### Before Division II: Cynthia L. Martin, Presiding Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

Jonathan Fields ("Fields") appeals his conviction and sentence, following a jury trial in the Circuit Court of Jackson County, Missouri ("trial court"), for one count each of attempted robbery in the first degree, armed criminal action, and resisting a lawful stop. He asserts instructional and sentencing error. We affirm.

### Facts and Procedural History[1]

On the morning of September 20, 2013, Fields was driving a maroon van. Theodore Watkins ("Watkins") was in the front passenger seat, and Marlyn Standifer ("Standifer") and

---

[1] Because we view Fields's primary point as asserting trial court error in refusing to submit his proffered verdict directing instructions, we view the evidence in the light most favorable to the defendant. *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003). We recognize that as to Fields's secondary point asserting trial court error in imposing sentence, we are to view the facts in a light most favorable to the verdict. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). We will do so in considering any additional facts relevant to the disposition of the secondary point. *See State v. McCabe*, 345 S.W.3d 311, 313 n.1 (Mo. App. W.D. 2011).

Fields's brother, Joshua Fields, were in the back seat. Watkins heard Joshua Fields talking on the phone, asking someone named "Bubba," "Which house is it?" Joshua Fields directed Fields to drive to the house with the bikes in front of it. The house was the residence of Daniel Starr ("Starr"). Fields parked in front of the house next to Starr's house. Joshua Fields said, "We're going to wait for the guy to come out of the house." Watkins said, "I'm not waiting. We're going to go in there now."

Joshua Fields and Standifer exited the van; both had weapons. They went to the backyard of Starr's house. Starr's next-door neighbor, Curtis Washington ("Washington"), was cleaning up debris in Starr's backyard. Watkins exited the van and went to the backyard of Starr's house. Joshua Fields and Standifer had Washington at gunpoint. One of the gunmen told Washington that if he didn't get them into Starr's house, he would be killed. The men directed Washington to knock on Starr's back door. Two of Starr's children answered the door and told Washington that Starr was sleeping. Washington asked them to wake Starr up. One of Starr's daughters woke him up and told him that Washington was at the door. When Starr unlocked the door, Standifer pushed Washington in; Joshua Fields and Watkins rushed in after them. Standifer pointed his gun at Starr. Starr ran back to the bedroom where his wife and one-year-old child were, shut the door, and told his wife to call the police.

Starr retrieved his .45 Glock semi-automatic handgun from under his mattress. He cracked the door open an inch or two, looked down the hallway, and saw one of the three men holding Washington. One of the men told Starr to come out of the bedroom because "[y]our kids is in the house. . . . You got ten seconds or it's going to be a murder." When Starr heard a single shot, he started firing down the hallway at the men, and Standifer and Joshua Fields fired back. Watkins ran out of the house and jumped back into the front seat of the van. After exchanging a round of shots, Standifer and Joshua Fields stopped firing. Starr heard his front door open, so he

2

ran out after the men. He saw Standifer and Joshua Fields get into the maroon van parked in front of his house and shot at the van as it drove away until his gun was empty. At least one of his bullets shattered the van's rear window.

Kansas City, Missouri, Police Department Patrol Officer David Elliott received a call over his police radio to be on the lookout for a maroon van in connection with an armed robbery in progress at a residence. Less than a minute later, Officer Elliott saw a maroon van matching the broadcast description. He noticed that the van's back window had a big hole in it, as if the window had been shot out. Officer Elliott turned on the patrol car's lights and siren and pursued the van.

During the pursuit, the front-seat passenger, Watkins, jumped out of the van and ran through a wooded area. He was later taken into custody when he ran near a highway. The pursuit continued until the driver, Fields, lost control and the van went into a ditch. During the chase, the officer observed Watkins throw several items, including Standifer's and Joshua Fields's guns, out the passenger side window of the van. Police recovered a semi-automatic handgun, blue gloves, a floor mat, and various other items. Fields, Standifer, and Joshua Fields were taken into custody.

Fields was charged as a prior and persistent offender with one count of attempted robbery in the first degree, one count of armed criminal action, and one count of resisting a lawful stop. While he was in jail, Fields made telephone calls to his girlfriend and to his brothers, during which he expressed his displeasure with Watkins for cooperating with the police in the investigation of what took place in Starr's house.

At trial, after the State presented its evidence and rested its case, Fields moved for judgment of acquittal at the close of the State's evidence. The trial court denied Fields's motion. Thereafter, Fields rested without presenting any evidence. He moved for judgment of acquittal

3

at the close of all the evidence; the trial court denied the motion. Fields's counsel proffered alternative verdict directing instructions on accomplice liability, which were refused. The jury found Fields guilty of attempted robbery in the first degree and armed criminal action, which were submitted on an accomplice liability theory, and of resisting a lawful stop, which was submitted on principal liability.

At the sentencing hearing, the State recalled Kansas City, Missouri, Police Detective Troy Schwalm as a witness to testify regarding Fields's jail telephone calls with his brothers concerning the operation of their family business of buying and selling of narcotics. The State recommended that the trial court sentence Fields as a persistent offender to concurrent sentences of twenty-five years' imprisonment for attempted robbery, ten years for armed criminal action, and seven years for resisting a lawful stop. The trial court denied Fields's motion for a new trial. The trial court imposed the sentences recommended by the State.

Fields appealed.

## Point I – Jury Instructions

### Standard of Review

"Our review of a trial court's refusal to submit a tendered jury instruction is limited to determining whether the trial court abused its discretion." *State v. Coen*, 364 S.W.3d 767, 771 (Mo. App. W.D. 2012). "A trial court abuses its discretion if the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation omitted).

### Analysis

In Fields's first point, he asserts that the trial court abused its discretion in refusing to submit his modified verdict directing instructions on accomplice liability. He complains that the

4

MAI-approved instructions submitted to the jury erroneously instructed the jury on accomplice liability. We disagree.

The State proffered the following verdict directing instruction for attempted robbery in the first degree:

INSTRUCTION NO. 6

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if, before or during the commission of an offense, he acts with the other persons with the common purpose of committing that offense or if, before or during the commission of an offense, for the purpose of committing that offense, he aids or encourages the other persons in committing it. *The commission of an offense includes immediate flight therefrom.*

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 20, 2013, in the County of Jackson, State of Missouri, Theodore Watkins, Joshua Fields, or Marlyn Standifer forcibly entered the residence of Daniel Starr at 7111 East 111th Terrace, Kansas City, Missouri, and displayed what appeared to be a deadly weapon, and

Second, that such conduct was a substantial step toward the commission of the offense of robbery in the first degree of Daniel Starr at 7111 East 111th Terrace, Kansas City, Missouri, and

Third, that Theodore Watkins, Joshua Fields, or Marlyn Standifer engaged in such conduct for the purpose of committing such robbery in the first degree,

then you are instructed that the offense of attempted robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that attempted robbery in the first degree, the defendant aided or encouraged Theodore Watkins, Joshua Fields, or Marlyn Standifer in committing the offense,

then you will find the defendant guilty under Count I of attempted robbery in the first degree.

5

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the offense of robbery in the first degree when he takes property with the purpose of withholding it from the owner permanently, in doing so uses or threatens the immediate use of physical force in preventing or overcoming resistance to the taking of the property, and in the course of taking the property displays or threatens the use of what appears to be a deadly weapon.

As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of robbery in the first degree.

The State proffered the following verdict directing instruction for armed criminal action:

INSTRUCTION NO. 7

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if, before or during the commission of an offense, he acts with the other persons with the common purpose of committing that offense or if, before or during the commission of an offense, for the purpose of committing that offense, he aids or encourages the other persons in committing it. *The commission of an offense includes immediate flight therefrom.*[2]

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant is guilty of the offense of attempted robbery in the first degree, as submitted in Instruction No. 6, and

Second, that Theodore Watkins, Joshua Fields, or Marlyn Standifer committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you are instructed that the offense of armed criminal action has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that armed criminal action, the defendant aided or encouraged Theodore Watkins, Joshua Fields, or Marlyn Standifer in committing the offense,

then you will find the defendant guilty under Count II of armed criminal action.

---

[2] Emphasis was added by this Court in both instructions.

6

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Fields's counsel objected to the State's instructions on the ground that the last sentence in the first paragraph, *while it follows MAI*, allegedly erroneously instructs the jury on the law of accomplice liability. Fields's counsel argued that section 562.041 limits accomplice liability to what happens "before and during" the crime, and flight as a continuation of the crime is not supported by the statute. Fields's counsel proffered jury instructions on Counts I and II that were identical to the State's proffered instructions, except that the sentence on immediate flight was omitted. The trial court refused Fields's proffered instructions and submitted the State's proffered verdict directing instructions on Counts I and II to the jury, over Fields's objections.

MAI-CR 3d 304.04 provides for the modification of the ordinary verdict directing instruction for an offense to cover the situation where the defendant acted with or aided another person or persons in the commission of an offense. Paragraph 8 of the Notes on Use for this instruction is applicable:

> [i]n cases where, in addition to evidence of the defendant's assisting or encouraging before or during the offense, there is evidence of assistance or encouragement occurring after the offense has been completed, and the defendant contends that the only aid, if any, provided by the defendant occurred after the offense was completed.

MAI-CR 3d 304.04, Notes on Use ¶ 8 (Sept. 1, 2003). Under these circumstances, the opening paragraph of the instruction is modified to add at the end: "The commission of an offense includes immediate flight therefrom." MAI-CR 3d 304.04, Notes on Use ¶ 8 (Sept. 1, 2003).

Rule 28.02(c) provides that "[w]henever there is an MAI-CR instruction or verdict form applicable under the law and Notes on Use, the MAI-CR instruction or verdict form *shall be given* or used to the exclusion of any other instruction or verdict form." (Emphasis added.) Here, there was an evidentiary basis for modifying Instructions 6 and 7 by including the

7

language contained in Notes on Use ¶ 8. The two jury instructions, thus, were in conformity with the requirements of MAI-CR 3d 304.04 and its concomitant Note on Use ¶ 8.

Fields's claim of instructional error is based on the language in section 562.041.1(2) RSMo 2000:

> 1. A person is criminally responsible for the conduct of another when
>
> . . . .
>
> (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Fields argues that the statute pertains only to conduct occurring either before or during the commission of the offense and the statute does not specifically extend accomplice liability to conduct occurring during the immediate flight from the commission of the offense. Therefore, according to Fields, the submitted instructions misstated the law, and he is entitled to a new trial before a properly instructed jury. In so arguing, Fields ignores the case law describing "getaway car" operation and "flight" in the "getaway car" as being an integral part of committing an underlying offense and supporting accomplice liability.

"Any evidence, either direct or circumstantial, that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *State v. Williams*, 409 S.W.3d 460, 468 (Mo. App. W.D. 2013) (internal quotation omitted). "Affirmative participation may be proven by inference . . . ." *Id.* "Circumstances that may support the inference of an accomplice's affirmative participation include presence at the crime scene; *flight therefrom*; association or companionship with others involved before, during, and after the crime; conduct before and after the offense; knowledge; motive; and a defendant's attempt to cover up his involvement." *Id.* (emphasis added) (internal quotation omitted).

8

Proof that a defendant acted as the driver of a getaway vehicle for a robbery has been held to be sufficient evidence of encouragement and participation to create accomplice liability. *See State v. Jones*, 296 S.W.3d 506, 510 (Mo. App. E.D. 2009) ("[P]roof that the defendant knew the principal actor had robbed someone and that the defendant acted as a getaway driver is sufficient evidence of participation to support a finding of accomplice liability.); *State v. Meuir*, 138 S.W.3d 137, 144 (Mo. App. S.D. 2004) ("[P]roof that a defendant acted as the driver of a getaway vehicle for a robbery" "has been held to be sufficient evidence of encouragement and participation to create accomplice liability."). In this case, the evidence and reasonable inferences showed that Fields drove Watkins, Standifer, and Joshua Fields to the crime scene and acted as the getaway driver after the crime was committed.

Accordingly, MAI-CR 3d 304.04 and its concomitant Note on Use ¶ 8 accurately states the law of accomplice liability and the trial court did not err in refusing Fields's proffered verdict directing instructions and submitting the State's modified verdict directing instructions to the jury.

Point I is denied.

### Point II – Sentencing

In Fields's second point, he asserts that the trial court erred in sentencing him to an excessive term of imprisonment. He contends that the trial court sought to punish him for maintaining his innocence and for exercising his right to trial. He further claims that his punishment was excessive because it exceeded the State's pre-trial ten-year sentence recommendation and because other participants in the crime received lesser sentences after pleading guilty. He argues that his sentence totaling twenty-five years was a violation of his rights to due process of law and to fair and impartial sentencing.

**Standard of Review**

A trial court's sentencing decision is reviewed for abuse of discretion. *State v. Ise*, 460 S.W.3d 448, 464 (Mo. App. W.D. 2015). "An abuse of discretion occurs when the trial court's action is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration." *Id.* (internal quotation omitted).

**Analysis**

Section 557.036.1 RSMo Cum. Supp. 2013 provides that the sentencing court "shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly." "It is fundamental that one convicted of a crime must not be subjected to a more severe punishment simply because he or she exercised a constitutional right." *Ise*, 460 S.W.3d at 464 (internal quotation omitted). In *Taylor v. State*, this court set forth the applicable standard:

> [I]f a defendant's exercise of a constitutional right was an actual factor considered by the sentencing court in imposing sentencing, then the exercise of the right was a 'determinative factor' in sentencing, and retaliation has been demonstrated, even if other factors could have been relied on by the trial court to support the same sentence.

392 S.W.3d 477, 488 (Mo. App. W.D. 2012). The determinative factor test is satisfied when "words stated by or attributed to the trial court [are] directly connected [to] the imposition of enhanced sentencing with a comment about the exercise of a constitutional right." *Id.* at 490. "[S]omething beyond the bare possibility that retaliation *could* have been a factor in sentencing must be shown." *Id*. at 488.

At the sentencing hearing, the State recalled Detective Schwalm, who testified to the content of telephone calls made from Fields's telephone account at the jail among Fields and his two brothers. According to Detective Schwalm, Fields and Joshua Fields talked with Jason

Fields, who was not in custody, about Jason setting up a drug distribution network while Fields and Joshua Fields were incarcerated.

The State recommended that Fields be sentenced as a persistent offender to twenty-five years' imprisonment on Count I, ten years' imprisonment on Count II, and seven years' imprisonment on Count III, to be served concurrently.

Fields's counsel argued that the State's original offer of ten years' imprisonment if Fields pleaded guilty was the appropriate sentence because his involvement in the crime was minimal compared to the other participants. The prosecutor responded that the State's original plea offer was made before the State discovered Fields's prison phone calls—phone calls suggesting that Fields lacked remorse for the crimes he had committed and that he was more interested in the possibility of future criminal endeavors as opposed to rehabilitation of his criminal past.

After hearing the evidence and arguments, the trial court pronounced sentence:

All right. Thank you. Then in Case No. 1316-CR03059-02:

> Count I, attempted robbery in the first degree, a Class B felony, however, the Court had available the A punishment range, I sentence you to 25 years in the Missouri Division of Adult Institutions.
>
> Count II, armed criminal action, an unclassified felony, I sentence you to ten years in the Missouri Division of Adult Institutions.
>
> On Count III, resisting arrest, a Class D felony, I sentence you to seven years in the Missouri Division of Adult Institutions. All those counts will run concurrently, meaning at the same time.

The trial court did not justify, explain, or detail to Fields the factors taken into account at sentencing. The trial court made no comment indicating that Fields's decision to exercise a constitutional right (*i.e.*, maintaining his innocence and exercising his right to proceed with a trial) was an actual factor the court considered in imposing sentence. We find no comments by the trial court or evidence in the record even suggesting the possibility that the trial court improperly punished Fields for claiming innocence and exercising his constitutional right to

11

proceed to trial and find no abuse of discretion in the sentences imposed. To the contrary, the record would have reflected to the trial court that Fields had no remorse for the criminal conduct of which he was convicted and, instead, demonstrated a propensity to have telephone discussions with family members about the possibility of considering the perpetration of other criminal endeavors in the future.

Given the record in this case, the trial court did not abuse its discretion in the imposition of Fields's sentence.[3]

Point II is denied.

## Conclusion

We affirm the trial court's judgment.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge,
and Karen King Mitchell, Judge, concur.

---

[3] Fields also argues in the argument portion of his appellate brief that the State's recommendation that he be sentenced to twenty-five years' imprisonment manifested prosecutorial vindictiveness. However, Fields failed to raise this claim in his point relied on. "The argument shall be limited to those errors included in the 'Points Relied On.'" Rule 84.04(e). "Issues raised in the argument portion of a brief but not in the point relied on are not preserved for appeal." _State v. Karr_, 968 S.W.2d 712, 717 (Mo. App. W.D. 1998). Therefore, we need not and do not consider Fields's claim of prosecutorial vindictiveness. That said, _ex gratia_, we reiterate that the record reflects that _after_ the State's original plea offer, the State became aware of Fields's phone calls from jail in which Fields was demonstrating a lack of remorse and, instead of focusing on rehabilitating his past criminal conduct, was engaging in telephone discussions reflecting an interest in the possibility of future criminal conduct. This was a relevant and appropriate factor for the State to consider in its sentencing recommendation to the court.