

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112333 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 2122-CR00475-01 |
| | ) | |
| HORATIO T. HARRIS, | ) | Honorable Scott A. Millikan |
| | ) | |
| Appellant. | ) | Filed: March 25, 2025 |

### Introduction

Horatio Harris ("Defendant") appeals from the judgment upon his conviction following a jury trial for three counts of abuse of a child and one count of involuntary manslaughter. On appeal, Defendant argues the trial court erred in overruling his motions for judgment of acquittal on all counts. We affirm the judgment of the trial court.

### Factual and Procedural History

Facts

Mother had two-year-old twin boys, Victim 1 and Victim 2.[1] In the last week of July 2020, Mother asked Defendant to take care of Victims 1 and 2 because she was at work and did

---

[1] The personal identifying information of victims and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

not have childcare services. Mother had known Defendant since she was 16 years old and they were close. Defendant lived in a boarding house with his own room, where he lived with his brother, and sometimes his girlfriend. A few weeks before Victim 1's death, Defendant told Mother that Victim 1 had fallen and knocked out two of his teeth.

According to Defendant's neighbor ("Neighbor"), Victims 1 and 2 very seldom left Defendant's room and never played with Neighbor's child. Neighbor stated that Victims 1 and 2 cried most of the time they were there. On one occasion, Neighbor heard what sounded like the impact of a grown man being hit and the boys immediately started crying. Neighbor was concerned with how Victims 1 and 2 were treated.

Mother left Victims 1 and 2 in Defendant's care until September 3, 2020. On that date, Mother got a call that Victim 1 was unresponsive after falling down some stairs. In a videotaped statement, Defendant told investigating police detectives that both Victims 1 and 2 were upstairs playing with the neighbors' children when he heard Victim 1 fall down the stairs. Defendant denied that he was with Victim 1 when he fell or that he saw him fall. Defendant stated that Victim 1 was "twisted up . . . messed up" and was draped over one of the bottom stairs. Defendant said he brought Victim 1 upstairs, where Victim 1 was in and out of consciousness. Defendant did not call 911. He waited approximately five to 15 minutes for his girlfriend to get home to call 911.

Defendant's girlfriend reported to the 911 dispatchers that Victim 1 was "not responding." She stated that Victims 1 and 2 had been with Defendant, and that Defendant told her that the floor was getting mopped and that Victim 1 slipped off the top step and fell down the stairs.

Emergency medical services responded and transported Victim 1 to the hospital, where hospital staff attempted to resuscitate Victim 1. Victim 1 was pronounced dead at around 9 p.m. Defendant did not go to the hospital.

Victim 1 had cuts, bruises, and abrasions all over his body. He had scars on his forehead and torso, and discoloration all over his body due to bruising. Some of the bruising appeared to have been caused by Victim 1 being hit with some sort of object. Victim 1 also had a fractured rib, and the subsequent autopsy revealed previously broken ribs that were in the process of healing. Victim 1 was missing some teeth, and had a tear of the tissue on the gingiva of his mouth. Defendant claimed that the bruising came from Victim 1 playing.

Victim 1's autopsy revealed that his cause of death was a deep tear in the liver resulting in a large accumulation of blood in his abdominal cavity. The medical examiner concluded that the manner of death was indeterminable. The medical examiner expressed that the manner of death could have been a fall down stairs, but reaffirmed multiple times that not all of Victim 1's injuries could be explained by his falling down stairs.

For his part, Victim 2 had scattered abrasions on both sides of his forehead, the lower part of his face, and his nose. Additionally, he had swelling around his eye and ears. Victim 2 also had a great deal of bruising on his back and hips, indicating that he was struck with some object. An x-ray of Victim 2 revealed multiple rib fractures, with some indication the bones had started to heal.

A pediatrician with expertise in child abuse cases evaluated Victim 2. The pediatrician diagnosed Victim 2 with Battered Child Syndrome, which occurs when multiple body systems have sustained trauma or injuries over multiple timeframes. Victim 2's injuries, including scarring, bruising, and broken bones in various stages of healing, supported that diagnosis. The

3

pediatrician also testified that, when children fall down stairs, there typically is no injury at all. The most common injuries are soft-tissue injuries, like a bruise or an abrasion to a single area of the body.

Procedural History

The State charged Defendant, via grand jury indictment, with murder in the second degree for the death of Victim 1, abuse or neglect of a child resulting in the death of Victim 1, abuse or neglect of a child as to Victim 1, and abuse or neglect of a child as to Victim 2. The case proceeded to trial.

At the close of the State's evidence, Defendant filed a motion for judgment of acquittal on all counts on the basis that the State had failed to prove beyond a reasonable doubt that Defendant was the person who injured Victims 1 and 2, and killed Victim 1. The trial court denied the motion. Defendant renewed the motion at the close of all the evidence, and the trial court again denied the motion.

At the jury instruction conference, Defendant submitted Instruction No. 11 on involuntary manslaughter in the first degree, a lesser-included offense of murder in the second degree. The trial court accepted the instruction and submitted it to the jury.

The jury found Defendant guilty of the lesser-included offense of involuntary manslaughter of Victim 1, two counts of abuse or neglect of a child as to Victim 1, and one count of abuse or neglect of a child as to Victim 2. Defendant now appeals.

**Discussion**

Standard of Review

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. McClain*, 685 S.W.3d 35, 38 (Mo. App. E.D. 2024) (quoting *State v. Bennish*,

4

479 S.W.3d 678, 684–85 (Mo. App. E.D. 2015)). "An appellate court's 'review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *Id.* at 38-39 (quoting *State v. Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022)). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.* at 39 (quoting *Minor*, 648 S.W.3d at 736). "This Court 'does not act as a "super juror" with veto powers, but gives great deference to the trier of fact.'" *Id.* (quoting *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)).

"An appellate court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *State v. Chaney*, 967 S.W.2d 47, 53 (Mo. banc 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)) (internal quotation marks omitted). "We give circumstantial evidence the same weight as direct evidence, and circumstantial evidence alone can be sufficient to support a conviction." *State v. Lowery*, 652 S.W.3d 783, 788 (Mo. App. E.D. 2022).

Points I and III

We consider Points I and III together because they implicate the same questions of law and fact. In his first and third points, Defendant argues the trial court erred in overruling his motion for judgment of acquittal on the counts of abuse or neglect of a child. He avers the State failed to prove those counts beyond a reasonable doubt because there was no evidence that Defendant was the person who knowingly caused Victims 1 and 2 to suffer physical injury.

*Analysis*

5

"A person commits the offense of abuse or neglect of a child if such person knowingly causes a child who is less than eighteen years of age: (1) To suffer physical . . . injury as a result of abuse or neglect." Section 568.060.2.[2] A person acts knowingly "with respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result." Section 562.016.3(2). "Because direct evidence of a defendant's mental state rarely exists, circumstantial evidence is sufficient." *McClain*, 685 S.W.3d at 39 (quoting *State v. Meyers*, 333 S.W.3d 39, 48 (Mo. App. W.D. 2010)). "The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and the defendant's subsequent conduct." *Id.* (quoting *State v. Hineman*, 14 S.W.3d 924, 927-28 (Mo. banc 1999)).

The State need not provide direct evidence that Defendant knowingly caused Victims 1 and 2 to suffer physical injury. *See State v. Ashcraft*, 530 S.W.3d 579, 585 (Mo. App. E.D. 2017). Circumstantial evidence is sufficient to support the convictions. *Lowery*, 652 S.W.3d at 788. Generally, a juror may reasonably infer that a defendant caused the child victim's injuries when the child is injured while in the defendant's care and the injury was caused by non-accidental trauma. *Ashcraft*, 530 S.W.3d at 585; *State v. Snow*, 437 S.W.3d 396, 401-02 (Mo. App. S.D. 2014); *State v. Yeager*, 63 S.W.3d 307, 312 (Mo. App. W.D. 2001).

Here, there is sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that Defendant knowingly caused Victims 1 and 2 "to suffer physical . . . injury as a result of abuse or neglect." Section 568.060.2. In fact, Defendant concedes there is sufficient evidence that Victims 1 and 2 suffered physical injury as a result of abuse. His argument is that insufficient evidence supports the jury's finding that Defendant was the person who caused the

---

[2] Unless otherwise indicated, all statutory references are to RSMo (2016) as amended.

6

injuries to Victims 1 and 2. Defendant points to the dearth of direct evidence that Defendant hit Victims 1 and 2.

Testimony from the mother of Victims 1 and 2 revealed that she left them in Defendant's care. Defendant confirmed this in his interview with the investigating officers. The evidence showed that Victims 1 and 2 suffered numerous physical injuries while in Defendant's care. Victim 1 was missing teeth and had cuts, bruises, abrasions, and scars all over his body. Victim 2 had abrasions on his face, swelling around his eye and ears, and bruises on his back and hips. Both Victims 1 and 2 had multiple rib fractures. Expert testimony revealed that Victim 1's injuries could not be explained by a single fall down the stairs, and Victim 2's injuries were consistent with Battered Child Syndrome.

Defendant nonetheless suggests the injuries could be equally attributable to Defendant's brother or his girlfriend. But this argument requires us to disregard our standard of review, which mandates that "the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *McClain*, 685 S.W.3d at 39 (quoting *Minor*, 648 S.W.3d at 736).

From this evidence, a reasonable jury could, and did, find beyond a reasonable doubt that Defendant knowingly caused Victims 1 and 2 to suffer physical injury as a result of abuse. *See Ashcraft*, 530 S.W.3d at 585; *Snow*, 437 S.W.3d at 401-02; *Yeager*, 63 S.W.3d at 312.

Points I and III are denied.

## Point II

In his second point, Defendant argues the trial court erred in overruling his motion for judgment of acquittal because the State failed to prove beyond a reasonable doubt that Defendant

7

committed involuntary manslaughter in the first degree in that there was insufficient evidence that Defendant recklessly caused the death of Victim 1.

*Analysis*

"A person commits the offense of involuntary manslaughter in the first degree if he or she recklessly causes the death of another person." Section 565.024. A person acts recklessly "when he or she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016. As previously mentioned, "because direct evidence of a defendant's mental state rarely exists, circumstantial evidence is sufficient." *McClain*, 685 S.W.3d at 39 (quoting *Meyers*, 333 S.W.3d at 48). "The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and the defendant's subsequent conduct." *Id.* (quoting *Hineman*, 14 S.W.3d at 927-28).

Defendant argues there was insufficient direct or circumstantial evidence from which a reasonable jury could conclude that Defendant recklessly caused Victim 1's death. Defendant is wrong.

The evidence was sufficient for a reasonable jury to find Defendant guilty of involuntary manslaughter beyond a reasonable doubt. *See State v. West,* 551 S.W.3d 506, 518-19 (Mo. App. E.D. 2018) (concluding "a juror could reasonably infer, from the collective impact of the evidence presented at trial, that defendant was guilty of first-degree involuntary manslaughter").

First, the evidence presented at trial clearly establishes a pattern of abuse of Victim 1 and, at best, Defendant's conscious disregard for Victim 1's health and well-being. We will not recount all of Victim 1's injuries again here, but suffice it to say Victim 1's teeth had been

8

knocked out, he had cuts, bruises, abrasions, and scars all over his body, and his ribs had been broken on more than one occasion. Victim 1, a two-year-old boy, sustained all of these injuries while he was in Defendant's care.

Second, Defendant's differing explanations for Victim 1's traumatic injuries constitute additional circumstantial evidence that Defendant recklessly caused the death of Victim 1. According to Defendant's girlfriend, Defendant was with Victim 1, the floor was being mopped, and Victim 1 slipped off the top step and fell down the stairs. Defendant told police detectives he was not with Victim 1 and did not see him fall. Rather, he claimed that Victims 1 and 2 had been playing in the hallway with the neighbors' children and Victim 1 fell down the stairs while playing. Contrary to Defendant's stories, Defendant's neighbor testified that Victims 1 and 2 were seldom outside of Defendant's room and her child never played with them. Defendant's differing and apparently false accounts of the cause of Victim 1's fatal injuries tend to prove his consciousness of guilt. *See State v. Montiel*, 509 S.W.3d 805, 809 (Mo. App. S.D. 2016); *State v. Chong-Aguirre*, 413 S.W.3d 378, 387 (Mo. App. S.D. 2013).

Third, Defendant's actions after Victim 1 was injured speak as loudly as his words. When Victim 1 was injured, Defendant did not call 911 to get him medical attention. Instead, he waited up to 15 minutes for his girlfriend to get home and call 911. By the time Defendant's girlfriend got home and called 911, Victim 1 was "not responding." Defendant also did not go to the hospital with Victim 1. Defendant's failure to seek medical attention for Victim 1 is prototypical evidence of his consciousness of guilt. *See State v. Scroggs*, 521 S.W.3d 649, 655 (Mo. App. W.D. 2017); *State v. Rinehart*, 383 S.W.3d 95, 104 (Mo. App. W.D. 2012).

Still, Defendant maintains in the argument section of his brief that "the involuntary manslaughter in the first degree statute does not expressly provide for violation based solely on

omission," and Instruction No. 11 allowed for Defendant's conviction based on an omission. That argument is not viewed favorably by this Court, and is waived.

As a preliminary matter, Defendant did not raise this claim in his point relied on, and it is not preserved for appellate review. *See* Rule 84.04(e); *State v. Fields*, 480 S.W.3d 446, 454 n. 3 (Mo. App. W.D. 2016).

In any event, Defendant submitted Instruction No. 11 to the trial court and may not now complain to this Court of the instruction's invalidity. The Supreme Court of Missouri "has long held that a defendant cannot complain of an instruction given at his request." *State v. Leisure*, 796 S.W.2d 875, 877 (Mo. banc 1990). This Court and our sister districts all have had occasion to apply the Supreme Court's clear holding in *Leisure. See State v. Martindale*, 945 S.W.2d 669, 674 (Mo. App. E.D. 1997); *State v. Beckett*, 858 S.W.2d 856, 858 (Mo. App. W.D. 1993); *State v. Nodine*, 810 S.W.2d 114, 115-16 (Mo. App. S.D. 1991). Defendant requested, and the trial court submitted, Instruction No. 11. Not until now has there been any suggestion that the instruction is somehow improper, including that it allowed Defendant's conviction for an omission, as opposed to the commission of an act required for involuntary manslaughter.

Pursuant to the long-held and unequivocal precedent of our Supreme Court, this Court, and our sister districts, Defendant will not be heard to complain of an instruction given at his own request. *Leisure*, 796 S.W.2d at 877. The argument is waived.

In sum, sufficient evidence supports the jury's verdict that Defendant is guilty of involuntary manslaughter in the first degree for the violent death of Victim 1. *See West*, 551 S.W.3d at 518-19.

## Conclusion

We affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

11